**Reversed and Remanded and Opinion filed November 25, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00755-CV

## GEORGE WOOD, Appellant

### V.

## MARTI KENNEDY AND DOYLE MURPHREE, JR., INDIVIDUALLY AND AS TEMPORARY CO-ADMINISTRATORS OF THE ESTATE OF DOYLE MURPHREE, SR., DECEASED, Appellees

**On Appeal from the Probate Court
Galveston County, Texas
Trial Court Cause No. PR 73,916-B**

### O P I N I O N

Appellees Marti Annette Murphree Kennedy and Doyle Robert Murphree, Jr., Temporary Co-Administrators of the Estate of Doyle Robert Murphree, Sr., deceased, sued appellant George Wood for eviction. The probate court found for appellees and awarded $6,250 in unpaid rent and $9,189.20 in attorney's fees and costs advanced. In his first two issues, Wood challenges the legal and factual sufficiency of the evidence to support the court's award of rental damages. In his

third issue, Wood contends that insufficient evidence supports the court's award of attorney's fees and costs. We conclude that although the evidence is legally insufficient to support the damages amount awarded by the probate court, the record nonetheless contains sufficient evidence to sustain $2,500 in unpaid rent. We therefore suggest a remittitur. Because there will be either a reduction of or a new trial on the rental damages, we remand the case for a new trial on attorney's fees and costs advanced.

## BACKGROUND

George Wood owns and rents commercial and residential real estate in Galveston County. In September 2012, Wood began storing some materials[1] relating to his real estate business in a building located at 2405 Cedar Drive in La Marque, Texas. Wood alleged he had reached an oral agreement with Doyle Murphree, Sr. ("Murphree Sr."), the owner, to rent the space for $250 per month, and that he had been given a one-year option to purchase the property. Wood testified that after he moved items into the building and made various improvements, he received several phone calls from an individual, whose name he could not recall, informing him that he should instead be paying $1500 per month in rent. Wood claimed that he was not asked to vacate the building and that the verbal lease was not terminated, but he admitted that as a result of the calls, he failed to pay rent.

Murphree Sr. died on November 11, 2012. Appellee Marti Kennedy, his daughter, became guardian of his estate in October 2012, and she and her brother, appellee Doyle Murphree, Jr. ("Murphree Jr."), were appointed temporary co-administrators of his estate following his death. Kennedy testified that she first

---

[1] Wood stored carpet, carpet padding, ceiling fans, light fixtures, plumbing parts, and shelving in the building.

2

contacted Wood in mid-September 2012, prior to her father's passing, after discovering her father had rented the property to him. She told Wood that she had a power of attorney from her father,[2] and that the building was not for sale, so "the deal was off." Wood asked to speak directly with Murphree Sr., who reiterated what Kennedy had said. Kennedy stated that she then told Wood to remove his property from the building. She assumed that Wood complied and phoned him two days later to verify. It is undisputed that Wood did not remove his property from the building after these calls.

Several months later, in May 2013, Kennedy and her sister observed several men moving items in and out of the building as they drove by. She contacted Wood, identified herself as Murphree Sr.'s daughter, informed him of her father's passing, and told him that she had been appointed co-administrator of her father's estate. Wood confirmed that he was the individual using the building. Kennedy asked Wood if he had any paperwork evidencing his purported agreement with her father or if he had paid any rent during his time occupying the property, to which he answered no. She then gave Wood ten days to move out.

Subsequently, Kennedy sent Wood a certified letter instructing him to vacate the property and deliver possession to Murphree Sr.'s estate within thirty days. The letter was returned unclaimed, however. Nevertheless, after the expiration of thirty days, Kennedy sued Wood for forcible entry and detainer in justice of the peace court in Galveston County. Wood failed to appear, and a default judgment was rendered against him ordering him to leave the property within five days and awarding Kennedy $7,700 in damages. Kennedy subsequently filed an application

---

[2] Kennedy did not become guardian of her father's estate until October. It is unclear from the record whether she in fact had a power of attorney from her father at the time this conversation occurred. Wood testified that no one ever contacted him claiming to be acting as the guardian of Murphree Sr.'s estate.

3

for a writ of possession.

Wood testified that he did not learn of the eviction suit until the day before the writ was to be executed, when he received a phone call from the constable. He claimed that he never saw the certified letter. The parties subsequently agreed to extend the move-out deadline. For a variety of reasons not relevant to our disposition of the case, the justice of the peace court lacked jurisdiction over the proceedings, and the probate court issued a writ of certiorari under former Texas Rule of Civil Procedure 575. Wood submitted to the jurisdiction of the probate court overseeing the administration of Murphree Sr.'s estate in order to expedite resolution of the case. Appellees filed a petition for eviction in the probate court and sought possession, damages for ten months of unpaid rent, and attorney's fees. Following a bench trial, the probate court issued a writ of possession in favor of appellees and signed a final judgment awarding appellees $6,250 in unpaid rent, $297 in court costs, and $9,189.20 in attorney's fees and costs advanced. This appeal followed.

ANALYSIS

In his first two issues, Wood challenges the legal and factual sufficiency of the evidence to support the damages awarded by the probate court. In his third issue, Wood contends the probate court erred by awarding attorney's fees and costs advanced.

**I.     We suggest a remittitur because the evidence was legally insufficient to support the probate court's damages award but was sufficient to sustain a lesser amount.**

In his first issue, Wood argues that the evidence is legally insufficient to support the $6,250 in rental damages awarded by the probate court. Because we sustain Wood's first issue, we do not reach his second issue challenging the factual

4

sufficiency of the evidence.

## A. Standard of review

When a bench trial is conducted and the court does not sign findings of fact and conclusions of law to support its judgment, all facts necessary to support the judgment are implied. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987). Because the trial court granted judgment for appellees but did not sign findings of fact and conclusions of law, we review Wood's complaints with the presumption that all findings of fact and conclusions of law were made in favor of appellees. The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984).

When the appellate record includes the reporter's and clerk's records, implied findings are not conclusive and may be challenged on the basis of legal and factual sufficiency. *BMC Software Belg.*, 83 S.W.3d at 795. We review the trial court's decision for legal sufficiency of the evidence by the same standards applied in reviewing the evidence supporting a jury's finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827.

Because Wood's legal sufficiency challenge concerns an issue on which he did not bear the burden of proof, we review it under a "no evidence" standard:

> "No evidence" points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of

5

law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact.

*Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 646–47 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (quoting *City of Keller*, 168 S.W.3d at 810). Evidence does not exceed a scintilla if the trier of fact would have to guess whether a vital fact exists. *Id.* at 647 (citing *City of Keller*, 168 S.W.3d at 813).

The final test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* (citing *City of Keller*, 168 S.W.3d at 827). Therefore, we must examine the record in this case to determine whether some evidence exists to support the probate court's judgment.

> **B.      There is sufficient evidence that Wood was a tenant at sufferance and thus liable for the reasonable rental value of the property during the ten-month holdover period.**

Wood asserts that regardless of whether a contract or quantum meruit measure of damages applies, the probate court had no evidentiary basis to support the damages it awarded. Because the proper measure of damages in an action for unpaid rent depends on the nature of an individual's tenancy, we begin by examining Wood's tenancy as a foundation for our review of the probate court's award.

A tenant who continues to occupy leased premises after expiration or termination of the lease is a holdover tenant. *See Gym–N–I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 908 (Tex. 2007). The status and rights of a holdover tenant differ depending on whether the tenant becomes a "tenant at will" or a "tenant at sufferance." A tenant at will retains possession of the premises with the

6

landlord's consent. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 915 (Tex. 2013). By contrast, a tenant who remains in possession without the landlord's consent occupies "wrongfully" and is said to have a tenancy at sufferance. *See Bockelmann v. Marynick*, 788 S.W.2d 569, 571 (Tex. 1990).

The parties' conduct determines whether the holdover tenant becomes a tenant at will or a tenant at sufferance. *Coinmach Corp.*, 417 S.W.3d at 916. If the holdover tenant continues to pay rent, and the landlord knows of the tenant's possession and continues to accept rent without objection, the tenant is a tenant at will and the terms of the prior lease will continue to govern the new arrangement absent an agreement to the contrary. *Id.* The prior lease terms do not control in a tenancy at sufferance, however, because there is no new agreement. *Id.* at 916–17. In such cases, the proper measure of damages is the reasonable rental value of the property during the holdover period. *Alford v. Johnston*, 224 S.W.3d 291, 297 (Tex. App.—El Paso 2005, pet. denied).

The parties disputed whether the oral lease was terminated. Kennedy contended that she asked Wood to vacate the property when she called him in September 2013, and that she was entitled to ten months' of unpaid rent from October 2013 through July 2014. Although Kennedy did not become guardian of her father's estate until October—after these alleged phone calls occurred—she stated that she told Wood she had power of attorney at that time. She further asserted that her father talked to Wood and informed him that the "deal was off," but it is unclear whether the deal referenced was Wood's purported option to purchase the property, Wood's lease of the property, or both. Wood claimed that no one asked him to relinquish possession of the premises during those conversations. He admits, however, that he failed to pay rent.

7

At all times relevant to this dispute, Wood has asserted that under the terms of his oral lease, he is liable for only $250 per month in unpaid rent. Because the probate court awarded $6,250 in damages—an amount that exceeded a rental rate of $250 per month—we imply a finding that Wood was a tenant at sufferance. *In re W.E.R.*, 669 S.W.2d at 717. The record supports such a finding. As soon as Kennedy discovered Wood was still occupying the property, she asked him to move out, sent him a certified letter asking him to vacate the premises, and commenced a suit for forcible entry and detainer. Thus, Kennedy did not consent to Wood's occupancy. Furthermore, Wood admitted he had not paid rent. Accordingly, we must examine whether the evidence is legally sufficient to support the probate court's finding that the reasonable rental value of the property during the ten-month holdover period was $6,250.

**C.    There is legally insufficient evidence that the reasonable rental value of the property during the holdover period was $6,250.**

The rental value of a property must be established with reasonable certainty. *City of Austin v. Teague*, 570 S.W.2d 389, 395 (Tex. 1978). In this case, the only evidence offered to support a reasonable rental value greater than $250 per month was the testimony of Kennedy and of Beatrice Murphree ("Ms. Murphree"), the deceased's ex-wife. Appellees contend that the Property Owner Rule, an evidentiary rule addressing when a non-expert landowner is qualified to testify about the land's value, applies to the administrator of a deceased landowner's estate and to a former co-owner of the property (the decedent's ex-wife). We need not address this contention, however, because Wood did not object to either witness's qualifications to offer valuation testimony.[3] Nevertheless, "[i]rrelevant

---

[3] Wood's counsel objected to Kennedy's ability to rely on hearsay to the same extent as an expert but did not object to her ability to provide valuation testimony. Of course, it is well settled that landowner valuation testimony may be based on hearsay. *Burr's Ferry, B. & C. Ry.*

8

evidence, even when admitted without objection, will not support a judgment." *Porras v. Craig*, 675 S.W.2d 503, 505 (Tex. 1984). We sustain Wood's first issue because the testimony provided by Kennedy and Ms. Murphree is legally insufficient to support a finding that the property's reasonable rental value during the holdover period exceeded $2,500.

The Property Owner Rule creates a rebuttable presumption that a landowner is personally familiar with his property and knows its fair market value, and thus is qualified to express an opinion about that value. *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 157 (Tex. 2012); *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852–53 (Tex. 2011); *Preston Reserve, L.L.C. v. Compass Bank*, 373 S.W.3d 652, 659 n.2 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (discussing rebuttal of presumption); *see also A.G.E., Inc. v. Buford*, 105 S.W.3d 667, 677 (Tex. App.—Austin 2003, pet. denied) (holding property owner rule allows lay opinion testimony about the fair market rental value of witness's property). But a qualified owner's testimony does not necessarily provide relevant evidence of value that can support a judgment. Rather, courts "insist that the testimony meet the same requirements as any other opinion evidence." *Justiss*, 397 S.W.3d at 156 (internal quotation marks omitted).

For example, an owner's testimony is not relevant if it refers to "intrinsic or some other value of the property" rather than to market value. *Porras*, 675 S.W.2d at 505. In addition, an owner's valuation testimony is not relevant if it is conclusory or speculative. *Justiss*, 397 S.W.3d at 156, 158–59. Qualifications and a subjective opinion will not—standing alone—support a judgment. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997). Thus, "[a]n owner may not simply echo the phrase 'market value' and state a number to substantiate

_____

*Co. v. Allen*, 164 S.W. 878, 880 (Tex. Civ. App.—Galveston 1914, writ ref'd).

9

his [valuation]; he must provide the factual basis on which his opinion rests." *Justiss*, 397 S.W.3d at 159. The valuation may be substantiated with evidence such as "price paid, nearby sales, tax valuations, appraisals, online resources, and . . . other relevant factors." *Id.*

Appellees argue that the witnesses' valuation testimony in this case was legally sufficient to support the judgment. In particular, appellees point to the witnesses' experience in the rental business, their comparison of the subject property with a nearby property owned by Ms. Murphree, and research on local rental values conducted by Kennedy. We address each of these alleged bases for the witnesses' opinions in turn.

With respect to the witnesses' experience, the supreme court's opinion in *Justiss* is instructive. The landowners in *Justiss* provided valuation testimony regarding the diminished market value of their property caused by a nuisance. The landowner who provided the most detailed testimony was employed as a loan officer for a local bank. *Id.* He stated that he kept track of local property sales because of his job. *Id.* He opined that the market value of his property had diminished by $400,000 due to the nuisance. *Id.* The supreme court concluded that none of the witnesses—including the loan officer—provided legally sufficient evidence of diminished market value. *Id.* at 161. Although the loan officer "demonstrated his familiarity with area market values, he failed to explain the factual basis behind his determination that his property suffered a $400,000 decrease in value." *Id.* Because he "stated a conclusion without explanation," the supreme court held that his testimony was "conclusory and no evidence." *Id.* Mere invocation of the phrase "market value," the court held, could not transform conclusory or speculative testimony into legally sufficient evidence. *Id.* at 159.

At the hearing, Kennedy and Ms. Murphree each offered different valuations for the subject property. Kennedy testified that she believed $700 per month was the "fair rental value" of the property.[4] Kennedy based her opinion, in part, on her years of experience in her parents' real estate businesses:

> Q. Is it true to say that the family has been in the real estate business now for many years?
> A. 45 to 50, I would say, yes, sir.
> Q. So, was it through that experience in the business that you came up with this amount?
> A. Yes

Kennedy also testified that she had been managing her father's rental business since his passing. Ms. Murphree asserted that $1500 per month constituted the property's fair market rental value. She also based her opinion on her years of experience in the rental business. She owned and operated a rental business with somewhere between fifty and sixty properties.

As in *Justiss*, the witnesses' testimony regarding their experience and respective beliefs concerning the property's fair market rental value—standing alone—are insufficient to sustain the judgment because such evidence does not indicate the factual basis behind the witnesses' valuations. *Id.* at 159; *see also Merrell Dow Pharms., Inc*, 953 S.W.2d at 712. Without more, this testimony is conclusory and speculative, and merely invoking the phrase fair market value cannot transform it into legally sufficient evidence. *See Justiss*, 397 S.W.3d at 159, 161.

We next turn to the witnesses' reliance on the rental rate of a building owned by Ms. Murphree and located a few blocks away from the subject property. The comparable sales method is one of three traditional approaches to determining

---

[4] In her petition for eviction, Kennedy submitted $1,500 as the property's fair market rental value.

11

market value. *Religious of the Sacred Heart v. City of Houston*, 836 S.W.2d 606, 615–17 (Tex. 1992). Comparable sales must be voluntary, occur near in time to the dispute and in the same vicinity, and involve land with similar characteristics in order to provide competent evidence of value. *See City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001).

To apply the comparable sales method properly, an appraiser or other witness must find data for sale (or, in this case, rental) prices of similar properties, then make upward or downward adjustments to these prices to account for differences between the similar properties and the subject property. *Id.* at 182. The appraiser must explain how these differences affected his calculations. *See Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, No. 13-0084, 2014 WL 4116810, at *13–14 (Tex. Aug. 22, 2014) (holding expert's testimony constituted legally insufficient evidence due to her failure to explain whether or why the properties she used for comparison were similar to the subject property, identify other plausible causes for differences between the properties' market values, or tie her valuation to differences between the properties). If the comparison is so attenuated that the appraiser and the fact-finder cannot make valid adjustments for differences between the properties, the rental may not be considered comparable. *Sharboneau*, 48 S.W.3d at 182.

In this case, the witnesses' testimony regarding Ms. Murphree's rented building cannot support the judgment because the witnesses did not explain how this rental informed the factual basis supporting their respective valuations of the subject property. Kennedy and Ms. Murphree testified that in recent years the subject property had been used solely as storage space, and Wood rented the property for that purpose. The allegedly comparable rental, by contrast, was a commercial building that the previous occupants had used to run a café. It appears

12

the witnesses' main reason for using the property as a comparison is its proximity to the subject property. Yet the witnesses provided few other details on the characteristics of the subject property and the comparable rental, and few details on how differences between the properties informed their valuation opinions.

Moreover, it is unclear how the witnesses could have made the appropriate price adjustments when they lacked certain basic knowledge of the subject property, such as whether it had a certificate of occupancy. The most detailed account of the subject property came from Wood's expert witness, Larry Park. According to Park, the building had a litany of defects. He asserted that the thin metal exterior of the building had eroded to such an extent that it had to be repaired or replaced. He further stated that the roof had numerous leaks, the floor was below grade, and water drained into the building. Park also testified that the subject property was uninhabitable because it was almost completely covered in mold.

Kennedy's $700 per month valuation of the subject property amounted to 23 cents per square foot. The comparison building had rented for $1600, or 67 cents per square foot. Kennedy offered no factual basis supporting her conclusion that a 44 cent downward adjustment was proper. She noted only that she took the condition of the subject property into account in formulating her opinion. But such a statement, like mere invocation of the phrase "fair market value," does not transform her otherwise conclusory testimony into legally sufficient evidence. *See Justiss*, 397 S.W.3d at 159; *cf. Zhu v. Lam*, 426 S.W.3d 333, 341 (Tex. App.— Houston [14th Dist.] 2014, no pet.) (holding that even assuming property owner's research provided sufficient factual basis for familiarity with local market values in 2010, owner's testimony was nevertheless legally insufficient because such familiarity did not explain how owner ascertained fair market value at time of

purchase). Her failure to state the factual basis for her conclusion makes her testimony legally insufficient to support the judgment. *See Justiss*, 397 S.W.3d at 159; *see also Mel Acres Ranch*, 2014 WL 4116810, at \*13–14.

Ms. Murphree's testimony is similarly insufficient. Her valuation of $1500 per month for the subject property amounted to a downward adjustment of 17 cents per square foot. She did not offer any factual basis for her valuation, much less tie the amount of her adjustment to differences between the two properties. Both witnesses thus failed to demonstrate the rental value of the property to a reasonable certainty. *Teague*, 570 S.W.2d at 395.

Finally, appellees point to the research Kennedy conducted to determine her valuation. Kennedy contacted Miles Real Estate, a rental company located in La Marque that had been in business for over twenty years, and discussed the rental values of commercial buildings in the area. Kennedy also checked the rental rates of storage buildings online and drove by other vacant buildings. Ultimately, her investigation revealed a range of 60 cents to $4 per square foot for storage space. She did not limit her research to buildings in similar condition to the subject property or without a certificate of occupancy, however, and the record does not disclose whether she discussed the rental values of storage properties with Miles Real Estate. Furthermore, Kennedy admitted that driving by other buildings revealed no useful information.

Although "online research" regarding the price paid to rent another property can inform a property owner's valuation, *see Justiss*, 397 S.W.3d at 159, the owner must also provide a factual basis for concluding that the other property is similar and that a particular adjustment in the price is appropriate given the differences between that property and the subject property. *See Mel Acres Ranch*, 2014 WL 4116810, at \*13–14; *Sharboneau*, 48 S.W.3d at 182. Because Kennedy did not

14

detail the conditions of the properties investigated, her research cannot support her testimony that the reasonable rental value of the property during the holdover period was $700 per month. Indeed, an examination of her testimony reveals that it is entirely possible no buildings similar to the subject property were included in her survey. Furthermore, it is unclear how Kennedy determined that 23 cents per square foot, a downward adjustment of 37 cents from the low end of the range she found, was the appropriate adjustment. These failures to provide a factual basis supporting her conclusion make her valuation opinion legally insufficient to support the judgment. *Justiss*, 397 S.W.3d at 159.

Having held the witnesses' testimony legally insufficient, we sustain Wood's first issue. Our holding does not end matters, however, because the record provides sufficient evidence to prove a lesser, ascertainable amount of damages with reasonable certainty. In these instances, appellees entitlement to recover damages survives the probate court's error in awarding an excessive amount. *See ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 877–78 (Tex. 2010); *Garza v. Cantu*, 431 S.W.3d 96, 108 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *see also Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 890 (Tex. App.—Dallas 2004, pet. denied) (nothing that courts distinguish between uncertainty as to the fact of damages, which is fatal to recovery, and uncertainty as to the amount of damages, which is not).

Wood did not contest liability or possession in the probate court, and he admitted that he had not paid rent since his initial payment in September 2012. Under the terms of his agreement with Murphree Sr., Wood was supposed to pay $250 per month. Given the probate court's implied finding that Wood was a tenant at sufferance, the prior lease does not govern. *Coinmach Corp.*, 417 S.W.3d at 916–17. Nonetheless, the prior lease's terms can provide evidence of the

15

property's fair market value. *Volume Millwork, Inc. v. W. Hous. Airport Corp.*, 218 S.W.3d 722, 730–31 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (concluding trial court properly considered lease terms as evidence of reasonable rental value).

We acknowledge that the price an individual is willing to pay does not, by itself, establish fair market value, as it does not indicate the price a seller will accept. *Mel Acres Ranch*, 2014 WL 4116810, at *9. Individuals frequently may make offers below market value in an effort to acquire property for less than it is worth. *Id.* Such is the nature of negotiation in a free market. In this case, however, there was evidence that Murphree Sr. had accepted Wood's offer to lease the property for $250 per month. Because this evidence demonstrates the price offered by the lessee and accepted by the lessor, it is sufficient evidence of the fair rental value of the property during the holdover period. *Id.*

In sum, the record contains legally sufficient evidence to support a finding that the reasonable rental value of the subject property during the ten-month holdover period was at least $2,500, but legally insufficient evidence to support the trial court's award of $6,250. Accordingly, we suggest a remittitur of $3,750, which will result in an award of $2,500 in damages if accepted. *See* Tex. R. App. P. 46.3; *ERI Consulting Engineers*, 318 S.W.3d at 880 (holding court of appeals may suggest remittitur where legally insufficient evidence does not support trial court's award of damages but there is competent evidence to establish some reasonably certain amount of damages); *Bunton v. Bentley*, 153 S.W.3d 50, 52–53 (Tex. 2004).

## II. The award of attorney's fees and costs advanced must be reversed and remanded for a new trial.

In his third issue, Wood challenges the probate court's award of $9,189.20 in

attorney's fees and costs advanced. Wood first argues that appellees may not recover fees under section 38.001 of the Civil Practice and Remedies Code because there was no agreement to pay rent of $700 per month. But attorney's fees and costs are recoverable in an eviction suit under section 24.006 of the Property Code.[5] Tex. Prop. Code Ann. § 24.006 (West 2000).

Wood also challenges the sufficiency of the evidence supporting the award of fees and costs advanced. We have concluded that the evidence is legally insufficient to support the $6,250 damages awarded by the probate court and suggested a remittitur of $3,750. If the remittitur is accepted, we cannot be reasonably certain that in awarding attorney's fees, the probate court was not significantly influenced by the consideration of damages for which there was legally insufficient evidence. *See Barker v. Eckman*, 213 S.W.3d 306, 313–15 (Tex. 2006). If the remittitur is not accepted, the damages issue will be remanded for a new trial. Under either circumstance, the award of attorney's fees and costs advanced must be reversed and remanded for a new trial. *Id.* at 315.

## CONCLUSION

Because the evidence does not support the award of $6,250 in damages, we suggest a remittitur of $3,750. If appellees file in this Court a remittitur of $3,750 within fifteen days after the issuance of our opinion, we will reform the probate court's judgment to award $2,500 in damages and affirm the judgment in part as reformed. We reverse the portion of the probate court's judgment awarding $9,189.20 in attorney's fees and costs advanced and remand the case for a new trial on that issue.

---

[5] We express no opinion regarding whether Kennedy and Murphree Jr. complied with section 24.006. Wood's brief does not address that issue, which the parties and the probate court are free to consider on remand.

If the suggested remittitur is not timely filed, the portions of the judgment awarding damages, attorney's fees, and costs advanced will be reversed and the case remanded to the probate court for a new trial on those issues. *See* Tex. R. App. P. 46.3.[6]

/s/    J. Brett Busby
       Justice

Panel consists of Justices Boyce, Busby, and Wise.

---

[6] Wood did not contest possession or liability for unpaid rent in the probate court. He admitted that he had not paid rent since September 2012 and that he had been occupying the property. The only issues before the probate court were the proper amount of unpaid rental damages and liability for fees and costs advanced. Accordingly, we conclude that the issues of damages, fees, and costs advanced are separable without unfairness to the parties, and that a new trial must be ordered only as to those issues. *See* Tex. R. App. P. 44.1(b).