**Affirmed and Memorandum Opinion filed April 30, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00336-CV

---

### DEVON HARRISON & ROBERT HARRISON, Appellants

### V.

### MERITZ FIRE & MARINE INSURANCE CO., LTD, Appellee

---

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 12-DCV-202473**

---

### MEMORANDUM OPINION

Appellee Meritz Fire & Marine Insurance Company, Limited sued Devon Harrison, Robert Harrison, and Northern & Western Insurance Company for fraud, conspiracy, and violations of the Texas Theft Liability Act.[1] Meritz obtained a

---

[1] Meritz filed additional claims but abandoned them at trial. Within Meritz's fraud claim, Meritz pled a fraudulent inducement claim. No party argues this claim was abandoned at trial.

summary judgment against Northern & Western Insurance Company.[2]  After a bench trial, the trial court entered a final judgment in favor of Meritz.

The Harrisons filed this appeal raising three issues.  First, appellants contend that the statute of limitations bars all claims asserted against them, except Meritz's fraudulent inducement claim.  Appellants argue that the fraudulent inducement claim fails because reliance is not justified as a matter of law. Second, appellants argue that the evidence is legally and factually insufficient to support the judgment. Third, appellants contend that the trial court erred in failing to apportion responsibility between appellants and Shannon Johnson, a designated responsible third-party.

We conclude that appellants failed to establish reliance was not justified as a matter of law, and the trial court's judgment can be affirmed on this ground. Therefore, we do not address appellant's first issue (regarding limitations) or their second issue (regarding the sufficiency of the evidence).[3]  Instead we address only part of appellants' first issue regarding justifiable reliance and appellants' third issue regarding apportionment of damages between appellants and the designated responsible third-party.

## I.  BACKGROUND

Meritz is a South Korean-based insurance company. Part of its business includes insuring "refund guarantees" in South Korea's shipbuilding industry. To mitigate this risk, Meritz looks to a reinsurer to shift all or part of its exposure

---

[2] The summary judgment ruling is not at issue in this appeal.

[3] Appellants' second issue only challenges sufficiency related to the initial fraud, conspiracy, and Theft Liability Act claims, not the fraudulent inducement claim. Like appellants' limitations argument, we would still uphold the judgment on the fraudulent inducement claim even if we were to conclude the evidence is insufficient to uphold the judgment on the claims for fraud, conspiracy, or the Theft Liability Act.

under the refund guarantees. Meritz used London Special Risks as its broker to help it locate appropriate reinsurers. Northern & Western Insurance Company ("NWIC") was one such reinsurer.

At all relevant times, appellant Devon Harrison was the president, managing director, and sole owner of NWIC. Appellant Robert Harrison, Devon's husband, was a senior underwriter for NWIC. From September 2007 to September 2008, Meritz and NWIC entered into five reinsurance contracts totaling more than $350 million dollars in reinsurance coverage. To assure Meritz that NWIC could insure such a large liability, NWIC, through Robert and Devon Harrison, represented that it had assets available on deposit with ABN AMRO Bank more than sufficient to cover the obligations and provided documentation to that effect. In exchange for the reinsurance obligations, Meritz paid $4,200,408.14 in premiums to NWIC.

Meritz was audited in 2008. As part of this process, Meritz needed additional information regarding the NWIC accounts at ABN AMRO Bank. Unable to obtain the information that it needed from NWIC, Meritz's broker requested the information from ABN AMRO Bank. As a result of this exchange, Meritz became concerned that the documentation provided by NWIC purporting to be from ABN AMRO Bank was fraudulent.

On October 21, 2008, Meritz sent NWIC a written demand to verify the ABN AMRO accounts by one of two possible methods on or before October 24, 2008. NWIC failed to satisfactorily perform the requested verification by the deadline or thereafter. During this period, NWIC represented to Meritz that NWIC had plenty of assets to secure the reinsurance obligations between the parties. Robert Harrison flew to South Korea in an effort to reassure Meritz that NWIC had the funds at ABN AMRO Bank and that NWIC would provide a secure bank communication to Meritz to confirm. Shortly thereafter, Robert sent an email

3

indicating that the secure bank message was sent and would be received by Meritz shortly. No secure bank message was received from ABN AMRO Bank.

Around this same period, Meritz received a secure bank communication from a bank in the Ukraine. The secure message stated that NWIC "wishes to confirm its full reservations of capital in support of its [reinsurance obligations] . . . . to expiration of each unless sooner released of liability each to the benefit of Meritz . . . ." No account number was provided and no amounts in any such accounts were listed to confirm that NWIC had reserved assets for the reinsurance obligations. At trial, Meritz's corporate representative testified that the secured message sent by NWIC was "totally different" from what Meritz requested.

On October 27, 2008, Meritz instructed its broker to rescind or cancel the five reinsurance agreements with NWIC and to obtain a full refund of the premiums. In its written instructions to its broker, Meritz stated that "[u]nder the current situation, we came to [a] conclusion that the [reinsurance obligations] provided by NWIC are false and fake and that no sufficient fund covering our potential claim exists under each reinsurance contract is deposited in ABN AMRO."

In November 2008, Meritz and NWIC entered into a settlement agreement. NWIC agreed to repay the premiums to Meritz, minus some fees paid to third parties, in exchange for a release. From December 2008 through March 2009, appellant Devon Harrison represented that the settlement payment would be made but that NWIC was facing difficulties in paying the settlement amount for various reasons. The settlement payment was never made.

On November 21, 2012, Meritz filed its petition against NWIC, Devon, and Robert. A summary judgment was taken against NWIC and the remainder of the case proceeded to a bench trial. At trial, Meritz agreed to pursue only its claims of

4

fraud, civil conspiracy, and Theft Liability Act violations against the Harrisons. The trial court rendered judgment for Meritz against the Harrisons, jointly and severally, for damages in the amount of $4,200,408.00. This appeal followed.

## II.    JUSTIFIABLE RELIANCE

Assuming without deciding that Meritz's claims for fraud, civil conspiracy, and claims under the Theft Liability Act for the representations made in and surrounding the reinsurance agreements are barred by limitations, there is one remaining claim—fraudulent inducement related to the settlement agreement between the parties.  Appellants do not argue that the fraudulent inducement claim[4] is barred by limitations, but instead assert that reliance was not justified as a matter of law.

### A.    Applicable Law

In a bench trial in which the trial court does not file findings of fact or conclusions of law, we imply all findings and conclusions necessary to support the judgment.[5] *AMPD Holdings, Inc. v. Praesidium Med. Prof'l Liab. Ins. Co.*, 555 S.W.3d 697, 706 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Implied findings of fact have the same weight as a jury's verdict. *Id*. The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence.  *Wood v. Kennedy*, 473 S.W.3d 329, 334 (Tex. App.—Houston [14th Dist.] 2014, no pet.). When the appellate record includes the reporter's and clerk's records, implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id*.

---

[4] Meritz also pled a conspiracy to defraud, and specifically alleged that "[a]s part of the conspiracy and to further its objectives, Defendants, and each of them, further fraudulently induced Meritz to enter into the November 24, 2008 Agreement."

[5] Here, appellants filed a request for findings of fact and conclusions of law but did not file a notice of past due findings. *See* Tex. R. Civ. P. 297.

We review the trial court's decision for legal sufficiency of the evidence by the same standards applied in reviewing the evidence supporting a jury's finding. *Id.* We review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.*

Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998). A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made. *Id.* at 48.

In a fraudulent inducement claim, the plaintiff must show that it actually relied on the representation and that reliance was justifiable.[6] *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). Justifiable reliance is typically a question of fact. *Id.* at 654. The element can be negated as a matter of law where reliance is not justified based on the particular circumstances. *Id.* (citing *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015) (per curiam)). "[A] party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." *Id.* at 658; *see also Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 499–500 (Tex. 2019) (same); *AKB Hendrick, LP v. Musgrave*

---

[6] Appellants assert in a single footnote that Meritz did not actually rely on the representations related to the fraudulent inducement claim but did not cite to any authority or portion of the record to support or further analyze this point. As a result, appellants have waived this issue on appeal. *See* Tex. R. App. P. 38.1(i).

6

*Enters., Inc.*, 380 S.W.3d 221, 232 (Tex. App.—Dallas. 2012, no pet.) ("Generally, reliance on representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context."). In determining whether justifiable reliance is negated as a matter of law, a court must consider the nature of the parties' relationship and the contract. *Orca Assets*, 546 S.W.3d at 653.

## B.    Analysis

Meritz claims that appellants fraudulently induced it to enter into the settlement agreement by promising to pay the settlement amount when appellants never intended to do so. Meritz contends that it relied on these promises to its detriment, namely, in delaying legal action against NWIC and appellants and in the "total loss" of the premium payments. Meritz also provided a release to NWIC and its related entities and officers in exchange for the settlement payment.[7]

Appellants cite two cases to support its argument that, in an adversarial context, reliance is negated as a matter of law. In *Ortiz v. Collins*, the defendants purchased real property at a foreclosure sale. 203 S.W.3d 414, 418 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Defendants filed a forcible detainer suit to evict plaintiff, the prior owner, from the real property but were unable to gain possession. *Id.* Defendants then hired an attorney to file a forcible detainer suit. *Id.* During the second lawsuit, the parties entered into settlement negotiations. *Id.* Plaintiff alleged that defendants orally agreed to sell him the property and that defendants' attorney indicated he would not execute a writ of possession unless plaintiff failed to perform under the settlement agreement. *Id.* at 418–19.

---

[7] At trial Meritz testified that the release provided by the settlement agreement was conditioned on the settlement payment being made.

Based on the alleged agreement, plaintiff did not defend the eviction lawsuit which proceeded to judgment. *Id*. at 419. It was undisputed that there was no executed written agreement between the parties. *See Id.* Defendants and their attorney denied ever agreeing to sell, rejected plaintiff's draft written settlement agreement, and evicted plaintiff. *Id*. This court held that plaintiff's reliance on defendants' oral statements was not justified as a matter of law because the parties were in an adversarial relationship. *Id*. at 420–22.

In *Valls v. Johanson & Fairless, L.L.P.*, the plaintiff sued opposing counsel for negligent misrepresentation. 314 S.W.3d 624, 635 (Tex. App.—Houston [14th Dist.] 2010, no pet.). "Courts have repeatedly held a party may not justifiably rely on statements *made by opposing counsel during settlement negotiations*." *Id*. at 635–36 (emphasis added) (citing *Am. Physicians Ins. Exchange v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994) ("We recognize that settlement negotiations are adversarial and that reasonable negotiation often involves hard bargaining by both sides.")). This court concluded that because the parties had an adversarial relationship and the negotiation process involved an arms-length transaction in which both sides were represented and advised by their own counsel, reliance was not justified as a matter of law. *Id*. at 636.

Here, there is no evidence that appellants' counsel made any misrepresentation. Additionally, there is no evidence that Meritz was represented by counsel in negotiating or drafting the settlement agreement or that it relied on any oral statement inconsistent with the written, executed agreement between the parties. Meritz and NWIC executed a written agreement that is consistent with the representations made before and after the agreement was executed. There are no extra-contractual oral misrepresentations upon which Meritz relied; instead, all the

8

representations made are contained within the contract. Thus, this case is distinguishable from both *Valls* and *Ortiz*.

Appellants argue that any reliance on statements made during an adversarial negotiation process is unjustified and unreasonable as a matter of law. "Although reliance on statements made in an adversarial context is not generally justifiable . . . we have found [no case] holding that a party's reliance on an opposing party's statement during litigation is unjustified as a matter of law." *Anderson v. Cocheu*, 176 S.W.3d 685, 690 (Tex. App.—Dallas 2005, pet. denied). There is also no indication that Meritz could have discovered the fraud was an obvious lie, or that with a reasonable investigation the statement could have been refuted. *See id*.; *see also Atl. Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 226 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) ("[I]n the context of two opposing parties engaged in litigation and negotiating at arm's length and from equal bargaining positions, one party cannot prevail in a subsequent action for fraud based on its 'reliance' on its opponents obvious lie or on a misrepresentation that, with reasonable diligence, could easily have been refuted.").

Other than stating that the parties' relationship was adversarial at the time the settlement agreement was executed, appellants fail to argue or point to evidence that would support their contention that reliance was not justified as a matter of law. "A party may not rely justifiably on a fraudulent misrepresentation when 'he knows that it is false or its falsity is obvious to him.'" *Wyrick v. Bus. Bank of Tex., N.A*., 577 S.W.3d 336, 349 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (quoting *Triesch v. Triesch*, No. 03-15-00102-CV, 2016 WL 1039035, at *2 (Tex. App.—Austin Mar. 8, 2016, no pet.) (mem. op.)). Appellants do not direct us to conclusive proof establishing that Meritz knew or should have known that the promise to repay the premiums contained in the settlement agreement was false

9

and that Meritz knew or should have known appellants had no intent or ability to perform that promise.

Our review of the record reveals at least a scintilla of evidence that Meritz justifiably relied on the promise to repay premiums made in the settlement agreement. In early November, Devon Harrison sent a letter regarding cancellation of the reinsurance agreements and agreed to the cancellation and refund of premium payments to London Specialty Risks and Meritz. Devon remarked that Meritz "made a full informed decision . . . we are in no way obligated to consider this most unusual request and our decision to do so is based solely on our tenured relationship with London Specialty Risks Ltd. and not [Meritz's] demands." NWIC continued to dispute that it had done anything wrong throughout the relationships between the parties and it insisted it could honor the reinsurance obligations issued to Meritz. Similarly, on November 21, 2008, Devon sent a letter to Douglas Min, Senior Vice President of Meritz, indicating that their counsel had drafted the release of liability for Meritz's review and consideration. The parties were not dealing with one another solely through counsel but were also communicating directly, attempting (before this case was filed) to resolve their dispute. Considering the evidence in the light most favorable to the challenged findings and indulging every reasonable inference that supports them, we conclude that there is legally sufficient evidence of justifiable reliance.

We overrule appellants' first issue as it relates to Meritz's fraudulent inducement claim. We do not analyze the statute of limitations issue because it would not change the result even if we decided in appellants' favor. Tex. R. App. P. 47.1; *see also Lance v. Robinson*, 543 S.W.3d 723, 740 (Tex. 2018) ("Rule 47.1 requires only that the court of appeals address issues necessary to dispose of the appeal.").

### III.   APPORTIONMENT OF DAMAGES

In their third issue, appellants argue that the trial court erred in failing to apportion responsibility between them and the designated responsible third-party, Shannon Johnson, for their independent acts.

#### A.   Applicable Law

Under Chapter 33 of the Texas Civil Practice and Remedies Code, the trier of fact must determine the percentage of responsibility to certain persons for the harm at issue. *See* Tex. Civ. Prac. & Rem. Code § 33.003(a).  The trier of fact is afforded wide latitude in determining the parties' proportionate responsibility. *See Jackson v. William Bros. Constr. Co.*, 364 S.W.3d 317, 325 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). We may set aside the fact finder's determination of proportionate responsibility only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*  Even if the evidence could support a different percentage allocation, an appellate court may not substitute its judgment for that of the fact finder. *Id.*; *Samco Props., Inc. v. Cheatham*, 977 S.W.2d 469, 478 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

"If responsibility for the plaintiff's injury cannot be apportioned with reasonable certainty among the defendants and other responsible parties . . . then by definition the trier of fact cannot find any of them 'responsible for a percentage of the harm,' and Chapter 33 does not apply." *Lakes of Rosehill Homeowners Ass'n, Inc. v. Jones*, 552 S.W.3d 414, 420 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also Onyung v. Onyung*, No. 01-10-00519-CV, 2013 WL 3875548, at *11 (Tex. App.—Houston [1st Dist.] July 25, 2013, pet. denied) ("When injuries resulting from the conduct of multiple tortfeasors cannot be apportioned with reasonable certainty, the plaintiff's injuries are indivisible and the tortfeasors are

11

liable for the whole.") (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644 (Tex. 1996)).

### B. Analysis

The trial court implicitly found that Meritz's injury could not be apportioned with reasonable certainty between appellants and that the designated responsible third-party was not responsible for any portion of the harm. *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017); *AMPD Holdings, Inc.*, 555 S.W.3d at 706 ("In a bench trial in which the trial court does not file findings of fact or conclusions of law, we imply all findings of fact necessary to support the judgment.").

Appellants contend that the damages are not indivisible because appellants made separate representations which prompted different premium payments at different times and that as a result, responsibility can be assigned between appellants. Even assuming that this is true, this argument does not take into consideration Meritz's fraudulent inducement claim. Appellants make no argument as to how or why the injury caused by the fraudulent inducement can be apportioned between them in regard to this claim, and it is their burden to do so. *See Amstadt*, 919 S.W.2d at 654.

Here, the harm inflicted as a result of the fraudulent inducement was the failure to pay the settlement amount in accordance with the agreement when Meritz performed its part of the bargain. In this case the harm resulted from a single, indivisible injury and joint and several liability among appellants is thus appropriate in such a case.[8] *See Onyung*, 2013 WL 3875548 at *11. We disagree

---

[8] Appellants do not assert that there is no evidence to support the judgment, but only that the trial court erred in failing to apportion or implicitly finding that Chapter 33 was inapplicable as between appellants.

with appellants that the injury itself was not indivisible. The trial court did not err in failing to apportion damages among appellants under Chapter 33.

Appellants argue in this point that the trial court's refusal to assign any percentage of responsibility to Johnson is against the great weight and preponderance of the evidence and is manifestly unjust. Appellants contend that Johnson defrauded NWIC and appellants in his representations regarding the accounts and asset availability at ABN AMRO Bank, and appellants relied on those representations when relaying them to Meritz. However, appellants fail to point to any evidence in the record that shows that Johnson was responsible for the fraudulent inducement damages.

In a factual sufficiency review, we must consider and weigh all of the evidence in a neutral light. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The evidence is factually insufficient only if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id*. The trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 364 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). We may not substitute our judgment for the fact finder merely because we reach a different conclusion. *Id*.

"Our fraud jurisprudence has traditionally focused not on whether a misrepresentation is directly transmitted to a known person alleged to be in privity with the fraudfeasor, but on whether the misrepresentation was intended to reach a third person and induce reliance." *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001). "If the false representations be made with a view of reaching the third person to whom it is repeated, and for the purpose of influencing him" then a fraud cause of action exists. *Gainesville Nat'l Bank v.*

13

*Bamberger*, 77 Tex. 48, 13 S.W. 959 (1890); *see also Ernst & Young, L.L.P.*, 51 S.W.3d at 578. Where a party makes a false representation to another with the intent that it should be repeated to a third party the third party can maintain an action in tort against the party making the false statement for the damages resulting from the fraud. *Am. Indem. Co. v. Ernst & Ernst*, 106 S.W.2d 763, 765 (Tex. Civ. App.—Waco 1937, writ ref'd).

Even taking all of appellants' arguments regarding Johnson as true as far as the initial fraud in the reinsurance agreements, there is no evidence that Johnson had anything to do with the settlement agreement and the misrepresentations forming the basis of the fraudulent inducement claim. Devon Harrison testified that she began to become suspicious about the legitimacy of the ABN AMRO bank accounts in the summer of 2008. Devon also testified that she had suspicion of the ABN AMRO accounts and funds allegedly therein when Meritz and NWIC reached settlement. According to Devon, she was desperately trying to repay the premiums and reaching out to Johnson to secure money for that purpose. In December 2008, NWIC filed a lawsuit against Johnson and others alleging fraud and conspiracy, and detailing the fraud perpetuated on NWIC by Johnson and others relating to the fake accounts at ABN AMRO. Devon contacted the FBI with her attorney before filing the lawsuit against Johnson. At some point in time, she testified before a grand jury against Johnson and his wife. Notwithstanding the lawsuit against Johnson, or her participation in an FBI investigation into Johnson's fraud, Devon testified that she continued to rely on Johnson's communications regarding funds and their availability to repay the premiums owed under the settlement agreement, implying that Johnson's continuing fraud was responsible for the continued repayment issues.

14

The trial court weighs the evidence and is the sole judge of credibility. Johnson did not make any representations to Meritz to induce it into a settlement; the Harrisons did. Moreover, based on the evidence that Devon knew that Johnson was defrauding NWIC, the trial court could have reasonably concluded that Devon's alleged reliance on Johnson's continuing representations was not reasonable or credible. The trial court's conclusion that Johnson was not responsible for the fraudulent inducement claim is not so against the great weight and preponderance of the evidence as to be manifestly unjust.

We overrule appellants' third issue.

## IV.    CONCLUSION

Having overruled appellants' issues on fraudulent inducement and apportionment, there is no need for the court to address the remaining issues raised by appellants. Even if appellants' first and second issues were meritorious, the judgment would be upheld on the fraudulent inducement claim, and there is no cause to remand on apportionment. As a result, the judgment of the trial court is affirmed.

/s/     Ken Wise
Justice

Panel consists of Justices Wise, Jewell, and Hassan.

15