Affirmed and Memorandum Opinion filed April 12, 2016.



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00512-CV

---

## MOHAMMED A. JAFAR, MOHAMMED M. CHOWDHURY AND ABDUS SOBHAN, Appellant

## V.

## SERAJ MOHAMMED, Appellee

---

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2012-10417**

---

# MEMORANDUM OPINION

This appeal arises from a dispute regarding the value of a general partnership following the withdrawal of one of its partners. Appellants Mohammed Jafar, Mohammed Chowdhury, and Abdud Sobhan appeal the final judgment in favor of their former partner, appellee Seraj Mohammed, challenging the trial court's (1) exclusion of appellants' expert for untimely designation, (2) denial of appellants' motion to exclude the testimony of Mohammed's expert as

unreliable, and (3) award of $85,500 to Mohammed as the redemption value of his partnership interest. We hold the trial court did not abuse its discretion when it excluded appellants' expert and denied appellants' motion to exclude Mohammed's expert. We also hold the evidence is legally sufficient to support the trial court's award of $85,500 to Mohammed. We therefore affirm the judgment.

## BACKGROUND

### A.    Formation of the partnership

Appellants entered into a written partnership agreement with Mohammed for the operation of Cellmart #1, a cellular phone and accessory store.[1]  Per the agreement, Mohammed invested $15,000 as a capital contribution in exchange for a 30% ownership interest in the partnership. The agreement also gave Mohammed a six-month option to purchase an additional 20% share in the partnership for $5,000. Mohammed timely exercised the option and became a 50% owner of the Cellmart #1 partnership. The parties executed an amended written agreement to document Mohammed's additional contribution and percentage of ownership.

Mohammed managed the store and was responsible for its day-to-day operations, which required him to be at the store six days per week. The other partners were present at the store sporadically throughout the day, but they also conducted other work to benefit the partnership. Jafar managed the store's inventory and maintained invoices for cell phones and accessories. Chowdhury obtained inventory for the store, and Sobhan oversaw the partnership's tax filings and relationships with banks and financial institutions.

---

[1] Although the agreement is entitled, "A Contract of Limited Partnership," the parties and the trial court applied the provisions applicable to general partnerships in chapter 152 of the Texas Business Organizations Code. Because the parties did not raise this issue on appeal, we will assume without deciding that the parties formed a general partnership in accordance with the provisions of chapter 152.

**B. Mohammed's withdrawal from the partnership**

In May 2010, Mohammed notified appellants that he intended to withdraw from the partnership. On May 27, 2010, he worked his last day in the store and formally withdrew. Appellants elected not to close the store and wind down the partnership.

Following his withdrawal from the partnership, Mohammed sent appellants a written demand for payment of the redemption value of his partnership interest pursuant to section 152.607 of the Texas Business Organizations Code. In response to Mohammed's demand letter, appellants offered Mohammed $8,000 to buy out his partnership interest. Appellants also offered to retain an appraiser to determine the value of the partnership and pay Mohammed 50% of the appraised amount. Mohammed accepted appellants' offer to retain an appraiser, but there is no evidence the parties moved forward on that agreement.

After an additional written notice of redemption went unanswered, Mohammed sued appellants for redemption, fraud, breach of contract, and breach of partner's duty of loyalty. Appellants filed a counterclaim against Mohammed alleging breach of fiduciary duty, conversion, and breach of contract.

**C. Trial**

The trial court granted partial summary judgment on the issue of liability in favor of Mohammed on his statutory claim for redemption of his 50% interest in the Cellmart #1 partnership. The trial court also granted appellants' motion for summary judgment with respect to Mohammed's claims of fraud and breach of duty of loyalty. The suit proceeded to a bench trial to decide Mohammed's claim for breach of contract and appellants' three counterclaims, and to determine the partnership's worth and any additional recovery to which Mohammed was entitled.

3

The trial court signed findings and fact and conclusions of law. The court concluded that Mohammed did not establish his claim for breach of contract and that appellants should take nothing on their counterclaims. Based on the testimony of Mohammed's expert witness, the trial court found the fair value of the partnership as of May 31, 2010 was $171,000; Mohammed's 50% partnership interest was therefore worth $85,500. The trial court also awarded Mohammed $6,000 for expert witness fees, which brought the total monetary judgment to $91,500.

## ANALYSIS

On appeal, appellants challenge the trial court's exclusion of their expert for untimely designation. They also challenge the trial court's denial of their motion to exclude the testimony of Mohammed's expert, on which the court based its valuation of the partnership's worth. Appellants argue that the expert's testimony was not reliable because it was based on a flawed valuation report. For this and other reasons, appellants contend the evidence is legally insufficient to support the trial court's judgment in favor of Mohammed. We address these issues in turn.

## I. The trial court did not abuse its discretion by excluding appellants' expert.

In their first issue, appellants argue the trial court erred when it excluded their designated expert witness, Sheila Enriquez, based on untimely designation. Appellants contend their supplemental disclosure and designation of expert were timely because they were submitted prior to the expiration of the extended discovery deadline. We disagree.

Unless otherwise ordered by the court, a party seeking affirmative relief must designate an expert within 90 days before the end of the discovery period. Tex. R. Civ. P. 195.2(a). Here, the trial court signed a docket control order that

4

provided the deadlines for expert witness designation. *See* Tex. R. Civ. P. 190.4. When a party fails to identify a witness timely, that party may not offer the testimony of that witness unless the court finds that (1) there was "good cause" for the failure to timely identify or (2) the failure "will not unfairly surprise or unfairly prejudice the other [party]." Tex. R. Civ. P. 193.6(a). The burden of demonstrating good cause or the lack of unfair surprise or prejudice is on the party seeking to call the witness. *Id*. 193.6(b). The trial court's finding of good cause or the lack of unfair surprise or prejudice must be supported by the record. *Id*.

The pre-trial timeline is as follows:

- July 18, 2012 – The trial court signed the original docket control order.

- May 24, 2013 – The trial court signed an order granting appellants' motion to continue trial and extend discovery deadlines. The order extended the trial date to September 2, 2013 and extended discovery to August 23, 2013. The order also stated: "All other court-ordered deadlines remain in effect."

- June 4, 2013 – The trial court issued an amended docket control order providing that "Expert witness designations are required and must be served by the following dates:

  (a) **06/14/13** Experts for parties seeking affirmative relief.

  (b) **07/12/13** All other experts."

- August 21, 2013 – The trial court granted appellants' second motion for continuance, extending the discovery deadline to October 4, 2013 and continuing the trial date to October 21, 2013. Trial court also crossed out the portion of appellants' proposed order stating "so that [Appellants] may designate their experts. . . ."

- September 15, 2013 – Appellants filed a supplemental response to disclosures. Appellants' answer to request for disclosure #6

named Enriquez as an expert witness.

- October 4, 2013 – Appellants submitted "Defendants' Designation of Expert" naming Enriquez an expert witness testifying to "the correct value of the business" and the "invalid methodology" of Mohammed's expert.

In summary, appellants first disclosed their expert witness on September 15, 2013, and did not file their "Designation of Expert" until October 4—well after the trial court's June 14 deadline. Because the trial court's orders did not extend the June 14 deadline, appellants' designation of their expert witness was not timely. Appellants therefore had the burden to show either good cause for their failure to timely identify the expert witness or that the failure would not unfairly surprise or prejudice Mohammed. *See* Tex. R. Civ. P. 193.6.

Appellants point to no evidence of good cause or lack of unfair surprise or prejudice. They instead argue that the trial court's May 24, 2013 and August 21, 2013 orders granting appellants' motions for continuance extended their deadline to designate expert witnesses to October 4, 2013. Although appellants correctly observe that the orders extended the deadline for discovery, they mistakenly believe the orders also extended their deadline for designating an expert. The plain language of the orders shows otherwise. The May 24 order specifically continued the trial date and extended the discovery deadline before stating "all other court-ordered deadlines remain in effect." Similarly, in the August 21 order, the trial court judge continued the trial date and extended the discovery deadline, but he crossed out appellants' proposed language referring to designation of experts. These orders therefore had no effect on the docket control order's specific and unambiguous language setting the expert witness designation deadline. *See Sprague v. Sprague*, 363 S.W.3d 788, 800 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

6

On appeal, appellants contend that Mohammed "never proved how he was surprised by the designation of [their] expert. . . ." But the burden does not rest with Mohammed. Rather, Rule 193.6(b) requires the party seeking to call the witness to prove lack of unfair surprise.

Because appellants failed to designate Enriquez as an expert by the deadline imposed by the docket control order and do not present evidence to establish good cause or lack of unfair surprise or prejudice, the trial court correctly granted Mohammed's motion to exclude. We overrule appellants' first issue.

## II. The trial court did not abuse its discretion when it admitted the testimony and appraisal report of Mohammed's expert.

In their second issue, appellants challenge the trial court's denial of their motion to exclude the testimony of Mohammed's expert, Jeffrey Jones, and the trial court's admission of Jones's appraisal report over appellants' objection. At trial, appellants sought to exclude Jones's expert testimony on two grounds: (1) Mohammed failed to properly and timely designate Jones as his expert; and (2) the report on which he based his testimony was unreliable. Because appellants do not argue on appeal that the designation was untimely, we do not consider that ground. Tex. R. App. P. 38.1(i); *see Pipkin v. Kroger*, 383 S.W.3d 655, 671 n.14 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("Grounds of error not asserted by point of error in the court of appeals are waived.").

On appeal, appellants challenge Jones's qualifications as an expert and the reliability of his opinion. Appellants may not challenge Jones's qualifications for the first time on appeal. Tex. R. App. P. 33.1(a); *Nissan Motor Co. Ltd. v. Armstrong,* 145 S.W.3d 131, 143–44 (Tex. 2004) (where pretrial motion to exclude expert's testimony attacked reliability of opinions but not expert's qualifications, objecting party did not preserve complaints regarding qualifications for appeal).

7

We therefore consider only whether Jones's testimony was reliable.

For an expert's testimony to be admissible, the expert must be qualified to testify about "scientific, technical, or other specialized knowledge," and the testimony must be relevant and based upon a reliable foundation. *See* Tex. R. Evid. 702; *TXI Transportation Co. v. Hughes*, 306 S.W.3d 230, 234 (Tex. 2010). Unreliable evidence is of no assistance to the trier of fact and is therefore inadmissible under Rule 702. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995). When a party challenges the reliability of an expert's testimony, we examine whether the expert's opinion comports with applicable professional standards. *See TXI Transportation Co.*, 306 S.W.3d at 235. To aid in that determination, the Supreme Court of Texas has suggested several non-exclusive factors to consider.[2] Using these factors, we determine not only the reliability of the technique or theory used to generate the challenged opinion, but also whether there are any "significant analytical gaps in the expert's opinion that undermine its reliability." *Id*.

### A. Jones's appraisal

Mohammed hired Jones, owner of Certified Appraisers, Inc., to appraise the value of the Cellmart #1 partnership as of May 31, 2010, the date of Mohammed's withdrawal. Jones testified as follows:

- Jones reviewed weekly sales reports for 2008–2010, sales tax reports for five consecutive quarters in 2009–2010, and the

---

[2] These factors include the following: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses which have been made of the theory or technique. *Id*. (citing *Robinson,* 923 S.W.2d at 557).

8

building lease and operating expense reports.

- Jones conducted industry research on the cellular phone business through IBISWorld, which is a database that reflects detailed operations of the cellular phone business.

- Jones reviewed various interest rates at the time of the assignment; looked at national, regional, and local economy information from the Federal Reserve Bank; and reviewed a national guide to obtain the value of cellular phone businesses.

- Based on the scope of his review and interviews of all four partners, Jones believed he had sufficient information to make a determination of value. The information Jones relied upon is the type of information that expert appraisers rely upon in formulating opinions regarding the value of cell phone business such as Cellmart #1.

- After obtaining the data, Jones utilized three approaches that are commonly applied to determine the fair market value of a business: (1) the asset approach, (2) the market approach, and (3) the income approach.

- Using the asset-accumulation methodology under the asset approach, Jones concluded the value of the business was $150,000.

- Using the direct-market-data methodology under the market approach, Jones arrived at a price-to-gross value of $210,000 and price-to-earnings value of $175,000.

- Using the multiple of discretionary earnings methodology under the income approach, Jones determined a multiplier of 1.75 reflected the rate of return typically required by an investor given the risk of the business. He also calculated the partnership's discretionary earnings by starting with gross income and subtracting operating expenses but not salary to an owner, depreciation, interest expense, or any personal expenses that might be run through the business. Multiplying those earnings by the multiplier and adding the net value of certain assets, Jones calculated that Cell Mart #1's value was $171,000.

Jones explained that based on his experience as a broker selling similar stores, he believed buyers put most weight on the income approach. He therefore determined that the fair market value of Cellmart #1 was $171,000 as of May 31, 2010. Jones also provided an appraisal report, which the trial court admitted, containing the spreadsheets, income statements, and balance sheets that show the formulas and the raw data Jones used to arrive at his conclusion.

## B. Appellants' reliability challenges

Appellants challenged the reliability of Jones's expert testimony and the underlying valuation report because Jones (1) based his report on information pertaining to stores categorized under NAICS code 51332 Telecommunication Systems,[3] which appellants argue represents much larger, complex stores, such as Sprint, T-Mobile, Verizon, or Cricket; (2) prepared the valuation report on May 8, 2013, which is three years after the termination of the partnership; (3) used many statistics that were not pertinent to the type of store appellants owned; and (4) did not review the bank records of the business. Addressing each of appellants' arguments, we conclude Jones's testimony and report were reliable.

Appellants' challenge regarding Jones's use of the NAICS 51332 code and other statistics does not undermine the reliability of Jones's opinion that $171,000 was the fair market value of Cellmart #1. Jones utilized the code solely to determine the business's value under the market approach, which valued the business at $175,000. But Jones concluded that the income approach was more accurate in this case, and the trial court adopted his value of $171,000 under the

---

[3] "NAICS code 51322" is the North American Industry Classification System code for Wireless Telecommunications Carriers. This category includes establishments that provide "wireless telecommunications network services, such as cellular telephone or paging services." *Available at* http://www.census.gov/eos/www/naics/reference_files_tools/1997/sec51.htm (last visited Dec. 2, 2015).

income approach rather than the market approach.[4]

Jones's expert testimony and appraisal report are also reliable despite the fact that Jones conducted the appraisal three years after Mohammed withdrew from the partnership. Appellants claim there is "absolutely no way to simulate the worth of a business three years later." But the financial records, interest rates, and other economic data Jones relied upon in his report all reflect conditions at the time of Mohammed's withdrawal. Jones was not limited to calculating the present value of the partnership; this historical data enabled Jones to calculate the partnership's value as of May 31, 2010. *See First Bank v. DTSG, Ltd.*, No. 14-13-00694-CV, 2015 WL 3462279, at *7 (Tex. App.—Houston [14th Dist.] May 28, 2015, no pet. h.) (valuation of company as of 2007 conducted in preparation for trial in 2013 was reliable); *see also Rogers v. Alexander*, 244 S.W.3d 370, 387 (Tex. App.—Dallas 2007, pet. denied) (valuation of business as of 2003 conducted in preparation for trial in 2007 was reliable). Appellants point out that the business deteriorated after Mohammed's withdrawal, but they do not show how that deterioration undermines the reliability of Jones's opinion of the business's value at the time of the withdrawal.

Appellants further argue that Jones's failure to review Cellmart #1's bank records is fatal to his report and caused Jones to subjectively adopt the unreliable and unscientific valuation method employed by Mohammed's counsel. Jones's testimony, however, was neither conclusory nor subjective. Despite not having the

---

[4] Similarly, appellants criticize Jones's failure to seek a buyer for the business, his consultation of Internal Revenue Service rulings regarding valuation of closely held businesses, and his reference to an industry rule of thumb for valuing cell phone businesses. They do not explain, however, how any of these factors affected Jones's opinion that $171,000 was the proper value under the income approach's multiple of discretionary earnings methodology. Appellants also complain about Jones's consultation of the IBISWorld database to gather information about the operation of cellular phone businesses, but we do not consider this complaint because it was not raised in the trial court. *See* Tex. R. App. P. 33.1.

11

bank records, Jones testified that the information he had—such as weekly sales reports, quarterly sales tax reports, and operating expense reports—was sufficient to perform the appraisal. The evidence showed that the income method selected by Jones calculated discretionary earnings by subtracting operating expenses, and this calculation would not be affected by how much of the remaining earnings the partners chose to accumulate as cash or to withdraw. Any additional cash on hand would have been treated as an asset under that method, which would have resulted in a higher value for the business than the one provided by Jones and adopted by the trial court.

Jones testified that he relied on data that is the same type that those in the field of business valuation rely upon to determine the value of a business like Cellmart #1. *See First Bank*, 2015 WL 3462279, at *7 (finding expert's valuation based on the asset, market, and income approaches reliable). Jones explained why he chose the income method over the others, and he provided the raw data supporting his conclusion that the fair market value was $171,000. Based upon our review of the record, we conclude that the trial court did not abuse its discretion in denying appellants' motion to exclude Jones's expert testimony. Appellants' second issue is overruled.

### III. The evidence is legally sufficient to support the trial court's award of $85,500 to Mohammed.

In their third issue, appellants challenge the legal sufficiency of the evidence supporting the trial court's finding that Mohammed should recover $85,500 on his claim for redemption of his 50% partnership interest.[5] In determining whether a

---

[5] Appellants do not challenge, and we therefore do not address, the trial court's additional award of $6,000 to Mohammed pursuant to Tex. Bus. Orgs. Code § 152.609(e)(3). Our review is limited to the legal sufficiency of the evidence supporting the trial court's determination that the value of Mohammed's interest in the partnership is $85,500.

finding is supported by legally sufficient evidence, the reviewing court considers the evidence in the light most favorable to the challenged finding and indulges every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). The reviewing court must also assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* at 820–821. If there is more than a mere scintilla of evidence supporting a finding of fact, we will overrule a legal sufficiency challenge. *CA Partners v. Spears*, 274 S.W.3d 51, 69 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

When, as here, the record on appeal contains a full reporter's record of the trial, appellants may challenge the trial court's implied findings for legal sufficiency under the same standards that govern challenges to a jury's findings, but must show that the judgment of the court below cannot be sustained by any theory raised by the evidence. *See Roberson v. Roberson*, 768 S.W.2d 280, 281 (Tex. 1989). In an appeal from a bench trial, we may not encroach upon the fact-finding role of the trial court, who alone determines the credibility of the witnesses, the weight to give their testimony, and whether to accept or reject all or any part of that testimony. *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 246 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We review de novo the trial court's implied legal conclusions supporting the judgment. *Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 815 (Tex. App.—Dallas 2008, no pet.).

## A. The trial court's implied finding that Mohammed's withdrawal was not wrongful

Appellants first argue that the trial court's award of $85,500 is incorrect because it is based on an incorrect redemption formula. The trial court concluded that the award should be based on the fair market value of Mohammed's

13

partnership interest on the date of withdrawal. *See* Tex. Bus. Orgs. Code § 152.602(a) (West 2012). Appellants argue Mohammed wrongfully withdrew from the partnership and therefore should have received the lower of (1) the fair value of his interest on the date of withdrawal, or (2) the amount he would have received if the partnership had been required to wind up at the time he withdrew. *See id*. § 152.602(b).

Although appellants did not allege wrongful withdrawal in their pleadings or mention it during the bench trial, they included the allegation in their proposed findings of fact and conclusions of law. The trial court's findings and conclusions do not include an express finding that Mohammed's withdrawal was not wrongful. Such a finding can, however, be implied based on the trial court's award of 50% of the fair market value of the partnership in accordance with section 152.602(a). *See* Tex. R. Civ. P. 299; *Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 648 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Had the withdrawal been wrongful, the trial court would have utilized the alternative formula prescribed by section 152.602(b).

Recognizing that a complaint regarding sufficiency of the evidence may be raised for the first time on appeal from a bench trial, *see* Tex. R. App. P. 33.1(d), we assume without deciding that appellant's challenge to the trial court's implied finding of no wrongful withdrawal is properly before us. We conclude that this challenge fails, however.[6]

Appellants assert Mohammed's withdrawal was wrongful because he "abandoned the store entrusted to him, fired all the employees, and left the

---

[6] We need not decide whether appellants or Mohammed had the burden of proof regarding wrongful withdrawal in this situation, as sufficient evidence supports the implied finding in either case.

14

business destitute." The trial court, however, granted summary judgment against appellant's claim that Mohammed breached the duty of loyalty. Moreover, none of appellants' allegations, even if true, would constitute wrongful withdrawal in this case. A withdrawal is wrongful only if:

(1) The withdrawal breaches an express provision of the partnership agreement;

(2) In the case of a partnership that has a period of duration, is for a particular undertaking, or is required under its partnership agreement to wind up the partnership on occurrence of a specified event, before the expiration of the period of duration, the completion of the undertaking, or the occurrence of the event, as appropriate:

(A) the partner withdraws by express will;

(B) the partner withdraws by becoming a debtor in bankruptcy; or

(C) in the case of a partner that is not an individual, a trust other than a business trust, or an estate, the partner is expelled or otherwise withdraws because the partner willfully dissolved or terminated; or

(3) the partner is expelled by judicial decree under section 152.501(b)(5).

Tex. Bus. Orgs. Code § 152.503(b).

Appellants do not point to any express provision of the partnership agreement that Mohammed violated by withdrawing, nor do they claim Mohammed withdrew prior to a stated period of duration or the completion of a particular undertaking. There is also no evidence Mohammed was expelled from the partnership by judicial decree. We therefore conclude the evidence is sufficient to support the trial court's implied finding that Mohammed's withdrawal was not wrongful.

15

## B.     The conflicting evidence of value

Appellants also challenge the legal sufficiency of the evidence supporting the trial court's award by pointing to other evidence that conflicted with Jones's $171,000 valuation of the partnership.  Appellant Mohammed Chowdhury testified that the partnership was worth $15,000 because he sold a similar store for the same amount in 2013.[7]   But the trial court, as the finder of fact, may believe or disbelieve the testimony of a witness in whole or in part.  *See Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 255 n. 5 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  The trial court simply rejected Chowdhury's testimony in favor of Jones's valuation.

The same reasoning applies to testimony regarding the Harris County Appraisal District's $12,798 appraisal of the partnership's personal property in 2009, and Mohammed's payment of $20,000 to purchase 50% of Cellmart #1 in 2008 and 2009.  We must assume the trial court resolved disputed facts in favor of its ruling.  *See City of Keller*, 168 S.W.3d at 823.  Jones's expert testimony valuing the partnership at $171,000 on May 31, 2010, was reliable and provided the trial court with sufficient evidence to support its redemption award.  We overrule appellants' third issue.

---

[7] Appellants argue that as a co-owner of the partnership, Chowdhury's opinion of the partnership's value was admissible under the property owner rule, which presumes that a property owner is qualified testify to the value of his property even if he is not an expert and would not be qualified to testify to the value of other property.  *See Wood v. Kennedy*, 473 S.W.3d 329, 336–37 (Tex. App.—Houston [14th Dist.] 2014, no pet.).  Appellants' argument implies that the trial court did not permit Chowdhury's testimony or consider it when determining the partnership's value.  To the contrary, the trial court admitted Chowdhury's testimony over Mohammed's objection.

## CONCLUSION

Having overruled appellants' issues, we affirm the judgment of the trial court.

/s/    J. Brett Busby
        Justice

Panel consists of Justices Boyce, Busby and Brown.