**Opinion filed March 21, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00096-CV

_____

## RALAND TUTTLE AND 1ST JARAY, LTD., Appellants
## V.
## EDUARDO BUILES AND B&A LABORATORIES, INC. D/B/A XENCO LABORATORIES, INC., Appellees

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CV-48,780**

### O P I N I O N

This appeal primarily involves a dispute over the amount of damages the trial court awarded to a landlord because of a tenant holding over after a commercial lease expired. Appellants, Raland Tuttle and 1st Jaray, Ltd., and Appellees, Eduardo Builes and B&A Laboratories, Inc. d/b/a Xenco Laboratories, Inc., were parties to the commercial lease. After a bench trial, the trial court rendered final judgment in favor of Appellants, awarding Appellants damages based upon the reasonable rental value of the property during the holdover period.

Appellants present six issues for review. In Appellants' first issue, they challenge the trial court's conclusion that Appellees became tenants at sufferance after the lease expired. In Appellants' second and third issues, they oppose the method the trial court used for calculating damages. In Appellants' fourth and fifth issues, they challenge the admissibility and sufficiency of the evidence to support the trial court's award of damages. In Appellants' sixth issue, they contend that the trial court erred when it failed to award them attorney's fees. We overrule Issues One, Two, and Three, and we sustain Issues Four, Five, and Six. Accordingly, we affirm in part, and we reverse and remand in part.

*Background Facts*

Tuttle is the sole owner of Jaray, which owns commercial property in Odessa. On January 3, 2007, Tuttle leased the Odessa property to Xenco for a term of five years. Builes owns Xenco and, during the relevant period of time, was the president of Xenco and operated Xenco on the Odessa property. In a separate agreement, Tuttle also agreed in writing to give Builes, or his assigns, the exclusive option to purchase the Odessa property for $180,000 on or before the date the lease expired. The lease was set to expire on December 31, 2011. Before the lease expired, the parties renegotiated the amount of rent Xenco was required to pay. On May 21, 2010, they entered into a new lease, which superseded the original, to reflect this change. The new lease required Xenco to pay $6,000 per month in rent on the first day of each month;[1] the parties made no other material changes. The lease also included a penalty provision for the late payment of rent and included the following holdover provision:

> 41.1    Any holding over after the expiration of this lease, with
> Landlord's consent, shall be construed to be a tenancy from month to

---

[1]The record reflects that Xenco was required to pay $5,000 per month under the original lease. But in exchange for Tuttle signing a subordination agreement, the parties agreed to raise the monthly rent to $6,000.

month, cancellable upon thirty (30) days written notice, and at a minimum rental of TWO HUNDRED PERCENT (200%) of the minimum rental, and upon the terms that existed during the last year of the term of this lease.

On December 15, 2011, Builes sent a formal notice in writing indicating Appellees' intent to exercise their exclusive option to purchase the Odessa property. The letter was delivered to Tuttle's address on December 23, 2011. However, Tuttle did not respond to the notice, and the lease expired on December 31, 2011. The next day, on January 1, 2012, Xenco failed to pay $12,000 in rent as required by the holdover provision. Apart from a late $6,000 rent payment on January 12, which Tuttle accepted, Xenco did not make any other payments in January. Nor did Xenco make any payments in February. Appellees continued to attempt to contact Tuttle throughout January and February to finalize the purchase agreement, but Tuttle failed to respond.

After Xenco also failed to pay rent in March, Tuttle sent Builes two written notices of termination and default that month.[2] In the letters, Tuttle gave notice that he was exercising his option to terminate the lease and instructed Builes that Xenco had ten days to vacate the premises. Builes and Xenco failed to vacate. As a result, in March, Tuttle filed a petition for forcible detainer in justice court to evict them from the premises. Appellees responded by filing a suit to quiet title in district court. Appellees argued that they were the rightful owners of the Odessa property because they had exercised their exclusive right to purchase the property. Appellants' eviction action was stayed pending resolution of the current lawsuit. Appellants subsequently filed various counterclaims, including multiple breach-of-contract claims. Appellants also filed a petition to remove a cloud on the title and to quiet title, arguing that Jaray rightfully owned the property in question.

---

[2]Tuttle sent the first notice on March 05, 2012 and the second notice on March 15, 2012.

In May 2016, after years of litigation, the trial court granted partial summary judgment in favor of Appellants. The trial court determined that Appellees were not entitled to ownership of the Odessa property because Builes improperly exercised the exclusive option contract.[3] Shortly after this interlocutory ruling, Xenco stipulated to liability with respect to all of the claims in Appellants' original counterclaim, except fraud. In particular, Xenco stipulated to contractual liability as to Appellants' multiple claims for breach of contract. After Xenco stipulated to liability, the parties also stipulated to damages resulting from some of the claims, including those arising from the breach of the May 2010 lease, such as late fees that accrued during the term of the lease and unpaid property taxes that accrued both before and after the lease expired. As a result, the only remaining issue was the amount of damages Xenco owed for unpaid rent and late fees during the holdover period. The record reflects that Xenco continued to occupy the Odessa property throughout the litigation and did not pay any rent or late fees during this time.

The trial court held a bench trial on August 18, 2016, to determine damages. At trial, Tuttle testified about the rent and late fees that Appellees owed him from January 1, 2012, to August 1, 2016. Tuttle claimed that, although he sent notices of termination and filed an eviction suit in March 2012, he nonetheless consented to Appellees' possession of the property at all times after the expiration of the lease. Tuttle said that, during this time, he believed that Appellees occupied the premises as tenants at will. Tuttle testified further that Appellees failed to pay any rent after the partial rent payment in January 2012 and that Appellees never paid any late fees. Tuttle explained that, under the penalty provision for the late payment of rent, Xenco was required to pay $50 per day for the first fifteen days of the month the rent

_____

[3]The trial court explained that Builes did not properly exercise his option to purchase the Odessa property because the notice he gave Tuttle of Builes's intent to exercise the option included additional terms not present in the original option contract.

remained past due and $75 per day if the rent remained unpaid after the initial fifteen days. According to Tuttle, the total amount of unpaid rent and late fees was $4,211,975.[4]

Builes also testified at trial. His testimony centered on what he believed was the reasonable rental value of the property during the holdover period. Builes first explained why the original terms of the lease reflected that rent was $5,000 per month. According to Builes, before both parties signed the lease in 2007, he and Tuttle agreed that Builes would purchase the property at the end of the lease. Given this arrangement, the parties decided to incorporate the future purchase price of the property into the lease. Builes testified that he and Tuttle decided to "take an amount of $3,800 from the purchase price of the building and [apply] it in the form of a lease" but "agreed that the proper value for the lease [by itself] was $1,200" per month. Builes then stated that he had recently been "looking around for new property for Xenco" and said that Xenco recently leased new property in Midland. Based on this recent investigation, Builes concluded, over Appellants' objection, that he felt that the reasonable rental value of the Odessa property was still "about 1,250 [dollars] a month."

After Builes provided his valuation, he described the Midland property. The entirety of Builes's testimony about the Midland property included the following: "We were able to find this place very close to downtown Midland, which was more expensive, more premium real estate, about the same size, much better condition." Builes then testified that "the agreement that we entered was -- the value is somewhere around $2,500 per month, but they did some improvements on the building, so we ended up signing a lease for about 3,200 [dollars]."

---

[4]Based on Tuttle's calculations, unpaid rent totaled $666,000 and unpaid late fees totaled $3,545,975.

Furthermore, Builes addressed why he made a partial rent payment in January 2012 after he notified Tuttle about his intention to purchase the Odessa property. Builes testified that it was not his intention to continue paying rent. Instead, Builes explained that the $6,000 payment was merely a "sign of good faith" in exchange for the delay in the purchase of the property.

After hearing the evidence, the trial court rendered final judgment in favor of Appellants. The trial court also issued findings of fact and conclusions of law. In relevant part, the trial court concluded that Xenco became a tenant at sufferance after the lease expired. As such, the trial court concluded that Appellants were only entitled to the reasonable value of rent, which it determined to be $1,200 per month, for every month Xenco remained on the property during the holdover period (from January 1, 2012, to October 31, 2016), "less the payment of $6,000 paid by Xenco in January." Accordingly, after it credited Xenco's partial rent payment, the trial court ruled that Appellants were entitled to recover $63,000 for unpaid rent during the holdover period. Moreover, the trial court declined to award Appellants any attorney's fees. This appeal followed.

*Analysis*

In Appellants' first issue, they contend that the evidence is both legally and factually insufficient to support the trial court's conclusion that Xenco was a tenant at sufferance. According to Appellants, after the lease expired, Xenco became a tenant at will because Xenco paid partial rent in January, which Tuttle accepted; Xenco remained in possession of the property; and Tuttle later testified that he consented to Xenco's possession throughout the holdover period. Additionally,

6

Appellants assert that they consented to Xenco remaining on the premises by agreeing to the trial court's temporary restraining orders.[5] We disagree.

In a legal sufficiency review, we consider the evidence in the light most favorable to the factfinder's decision and indulge every reasonable inference in support of that decision. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id.* The factfinder is the sole judge of the credibility of the witnesses and is responsible for resolving any conflicts in the evidence, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Id.* at 819–21; *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004). In a factual sufficiency review, we consider and weigh all of the evidence, and we will set aside the trial court's decision only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

A tenant who continues to occupy leased premises after expiration or termination of its lease is a "holdover tenant." *See Gym–N–I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 908 (Tex. 2007). "The status and rights of a holdover tenant, however, differ depending on whether the tenant becomes a 'tenant at will' or a 'tenant at sufferance.'" *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 915 (Tex. 2013).

A tenant at will is a holdover tenant who "holds possession with the landlord's consent but without fixed terms (as for duration or rent)." BLACK'S LAW DICTIONARY 1694 (10th ed. 2014). Because tenants at will remain in possession

---

[5]Pursuant to the trial court's temporary restraining orders, Appellants were restrained and enjoined from taking any action in their forcible-detainer lawsuit and from otherwise selling or leasing the Odessa property.

with their landlord's consent, their possession is lawful, but it is not for a fixed term, and the landlord can put them out of possession at any time. *Coinmach*, 417 S.W.3d at 915. By contrast, a tenant at sufferance is "[a] tenant who has been in lawful possession of property and wrongfully remains as a holdover after the tenant's interest has expired." BLACK'S LAW DICTIONARY 1605 (9th ed. 2009); *see also Bockelmann v. Marynick*, 788 S.W.2d 569, 571 (Tex. 1990) ("A tenant who remains in possession of the premises after termination of the lease occupies 'wrongfully' and is said to have a tenancy at sufferance."). The defining characteristic of a tenancy at sufferance is the lack of the landlord's consent to the tenant's continued possession of the premises. *Coinmach*, 417 S.W.3d at 915. Thus, with the owner's consent, the holdover tenant becomes a tenant at will; without it, a tenant at sufferance. *Id.* at 915–16.

Commercial lease agreements often provide that, in the event the tenant holds over after the expiration of the lease, the tenancy will automatically convert to a month-to-month tenancy. *See, e.g.*, *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 475 (Tex. 2017); *Gym–N–I Playgrounds*, 220 S.W.3d at 908. Here, the trial court correctly determined that Appellees were holdover tenants after December 31, 2011, because Appellees did not properly exercise their option to purchase the property and because Appellees remained in possession of the property after the lease expired.

However, because the holdover provision in this case did not state that *any* "holding over" will be deemed a tenancy at will but, instead, based that determination solely upon whether the landlord consented, we must now determine whether Appellants consented to Appellees remaining on the premises as holdover tenants. If Appellants did consent, then Appellees became tenants at will after the lease expired. *Coinmach*, 417 S.W.3d at 915–16. But if Appellants did not consent, then Appellees became tenants at sufferance during the holdover period. *Id.* To

8

determine whether Appellants consented to Xenco becoming a holdover tenant, we must look to the parties conduct after the lease expired. *See id.* at 916.

"'Under the common law holdover rule, a landlord may elect to treat a tenant holding over as either a trespasser'—that is, a tenant at sufferance—'or as a tenant holding under the terms of the original lease'—that is, a tenant at will." *Coinmach*, 417 S.W.3d at 916 (quoting *Bockelmann*, 788 S.W.2d at 571). Thus, an implied agreement to create a new lease using the terms of the prior lease may arise if both parties engage in conduct that manifests such intent. *Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.*, 938 S.W.2d 102, 108–10 (Tex. App.—Houston [14th Dist.] 1996, no writ); *see, e.g.*, *ICM Mortg. Corp. v. Jacob*, 902 S.W.2d 527, 532–33 (Tex. App.—El Paso 1994, writ denied). For example, if the tenant remains in possession and continues to pay rent, and the landlord, having knowledge of the tenant's possession, continues to accept the rent without objection to the continued possession, the tenant is a tenant at will, and the terms of the prior lease will continue to govern the new arrangement absent an agreement to the contrary. *See, e.g.*, *Carrasco v. Stewart*, 224 S.W.3d 363, 368 (Tex. App.—El Paso 2006, no pet.); *Barragan v. Munoz*, 525 S.W.2d 559, 561–62 (Tex. Civ. App.—El Paso 1975, no writ). The mere fact that the tenant remains in possession, however, is not sufficient to create a tenancy at will. *See ICM Mortg.*, 902 S.W.2d at 533–34. Unless the parties' conduct demonstrates the landlord's consent to the continued possession, the tenant is a tenant at sufferance. *See id.*

Here, the parties' conduct shows that Appellants did not consent to Xenco's continued possession of the property after December 31, 2011. Although Tuttle testified at trial that Appellees where holding over with his consent after the lease expired, the parties' conduct during the holdover period showed the contrary. Once the lease expired, Xenco was required to pay $12,000 on the first of each month to maintain lawful possession of the property on a month-to-month basis. However,

Xenco did not pay any rent on January 1, 2012, and only paid partial rent on January 12, 2012. Additionally, under the holdover provision, which incorporated the terms of the lease, Xenco was required to pay late fees, which it likewise failed to do. Although Tuttle accepted the partial rent payment of $6,000, the acceptance of a one-time, partial payment of rent, by itself, does not automatically create a tenancy at will. *See Fed. Deposit Ins. Corp. v. Inducto-Bend, Inc.*, 753 F. Supp. 651, 654 (S.D. Tex. 1991) (applying Texas law). Xenco did not make any other payments of rent or late fees in January. And the record does not reflect any separate agreement between the parties that would have enabled Xenco to remain on the premises without paying full rent. Moreover, Xenco did not make any payments in February but continued to occupy the premises. *See Coinmach*, 417 S.W.3d at 916 (explaining that mere possession of the property alone is insufficient to create a tenancy at will). Accordingly, given Xenco's failure to pay full rent, Appellants sent Xenco notices to vacate the premises and filed a forcible detainer suit to evict Xenco in March 2012. Further, although Xenco remained in possession of the property throughout litigation, it never paid any rent or late fees during the holdover period (January 1, 2012, to October 31, 2016). We also note that, after the lease expired, Xenco was operating under the assumption that it had validly executed its exclusive option to purchase the property and, thus, did not believe a landlord-tenant relationship existed. Therefore, because the parties' conduct indicates that Xenco lacked Appellants' consent to occupy the premises during the holdover period, we conclude that the evidence is both legally and factually sufficient to support the trial court's conclusion that Xenco was a tenant at sufferance after the lease expired.

As part of their first issue, Appellants also argue that the trial court was precluded from concluding that Xenco was a tenant at sufferance, as a matter of law, because Appellees asserted a superior claim of title. To support this argument, Appellants cite to *ICM Mortgage. See* 902 S.W.2d at 530. In addition, Appellants

10

appear to argue that Xenco is precluded from arguing on appeal that it is a tenant at sufferance because Appellees stipulated to contractual liability with respect to Appellants' counterclaims and stipulated to reimburse Appellants for the payment of ad valorem taxes, both after and before the lease expired. Moreover, Appellants contend that Appellees admitted to being tenants at will during the holdover period. We disagree.

In *ICM Mortgage*, the El Paso Court of Appeals stated that "[a] tenant at sufferance is one who wrongfully continues in possession of property after his right to possession has ceased and *does not assert a claim to superior title*." *Id.* (emphasis added). Although it appears from the plain text of this statement that a holdover tenant who merely asserts a superior claim of title is precluded from ever being considered a tenant at sufferance, we decline to give it that meaning. Simply claiming a superior right to title, without actually having a superior right, does not eliminate the wrongfulness of a holdover tenant's possession. Nor does it automatically mean that the holdover tenant becomes a tenant at will. *See Coinmach*, 417 S.W.3d at 915 (explaining that a holdover tenant is either a tenant at will or a tenant at sufferance). Instead, we read the above statement to mean that a tenant at sufferance is a holdover tenant who wrongfully remains in possession of the property after its right to possess the property has expired and who *lacks* superior title to the property. *See ICM Mortg.*, 902 S.W.2d at 530. Here, the trial court determined that Xenco lacked superior title to the property in question and wrongfully continued to occupy the property without Appellants' consent. Therefore, Xenco was a tenant at sufferance.

Further, we conclude that Xenco's stipulation to contractual liability under the lease, paired with its stipulation to reimburse Appellants for certain property taxes, does not preclude Xenco from arguing that it was a tenant at sufferance during the holdover period. Although Xenco stipulated to contractual liability and to some

11

damages, such as the amount of property taxes, it did not stipulate to how certain damages would be calculated, namely unpaid rent and late fees owed after the lease expired. In fact, at the hearing where the parties presented their stipulation to the trial court, Appellees' trial counsel informed the trial court that the amount of damages was still in dispute. Moreover, during the subsequent trial on damages, the parties disputed the amount recoverable for unpaid rent and late fees owed during the holdover period. We note that the extent to which Xenco was contractually liable under the lease depended on the nature of Xenco's holdover tenancy after the lease expired. *See generally Wood v. Kennedy*, 473 S.W.3d 329, 335 (Tex. App.— Houston [14th Dist.] 2014, no pet.) (explaining that no contractual liability under the lease exists in a tenancy at sufferance). While Appellees admitted to being "holdover tenants," there is no evidence in the record to support Appellants' assertion that Xenco admitted or stipulated to specifically being a tenant at will or otherwise acknowledged that it remained on the premises with Appellants' consent. Therefore, Xenco was not precluded from arguing that it was a tenant at sufferance during the holdover period. Accordingly, we overrule Appellants' first issue.

In Appellants' second and third issues, they challenge the method the trial court used to calculate damages. In both issues, they contend that the trial court erred when it failed to award damages based upon the "liquidated amounts" under the lease regarding holdover rent and late fees. However, we note that the prior lease terms do not control in a tenancy at sufferance. *Wood*, 473 S.W.3d at 335 (citing *Alford v. Johnston*, 224 S.W.3d 291, 297 (Tex. App.—El Paso 2005, pet. denied)). Rather, when the holdover tenant is a tenant at sufferance, the proper measure of damages is the reasonable rental value of the property during the holdover period. *Id.*

Here, as we discussed in our disposition of Appellant's first issue, Xenco was a tenant at sufferance during the holdover period. As a result, the trial court correctly

determined that damages should be based upon the reasonable rental value of the property. Accordingly, we conclude that the trial court did not err when it declined to award damages as defined by the terms of the prior lease agreement. We overrule Appellants' second and third issues.

In Appellants' fourth issue, they challenge the admissibility of Builes's valuation testimony. Specifically, Appellants argue that the trial court erred when it overruled their objection to Builes's testimony, in part, because he was not a qualified expert and because testimony about what he "felt" was the proper rental value of the Odessa property was not relevant because it was conclusory and speculative. We agree with Appellants' argument that Builes's valuation testimony was not relevant, given its conclusory and speculative nature.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). A trial court abuses its discretion only when it acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for it. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

In response to Appellants' argument that Builes was not a qualified expert, Appellees assert that Builes's testimony was proper under the "Property Owner Rule." Under this rule, a property owner may testify about the value of his property. *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155 (Tex. 2012). The rule creates a rebuttable presumption that a landowner is personally familiar with his property and knows its fair rental value and, thus, is qualified to express an opinion about that value. *Wood*, 473 S.W.3d at 336. As such, the property owner is permitted an exception to the general rule that a witness must first establish his

qualifications to opine on land values before he may testify. *Justiss*, 397 S.W.3d at 157.

Nevertheless, to be admissible, a qualified owner's testimony must still meet the "same requirements as any other opinion evidence." *Justiss*, 397 S.W.3d at 156 (quoting *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)). Importantly, an owner's valuation testimony must be relevant. *Wood*, 473 S.W.3d at 337. "[A]n owner's valuation testimony is not relevant if it is conclusory or speculative." *Id.* As with expert testimony, property valuations may not be based solely on a property owner's *ipse dixit*. *Justiss*, 397 S.W.3d at 159. That is, a property owner "may not simply echo the phrase 'market value' and state a number to substantiate his [valuation]." *Id.* His subjective opinion, by itself, will not provide relevant evidence of value. *Id.* Instead, to be relevant, the witness "must provide the factual basis on which his opinion rests." *Id.* "Evidence of price paid, nearby sales, tax valuations, appraisals, online resources, and any other relevant factors may be offered to support the [valuation]." *Id.*

Here, it appears that the trial court concluded that Builes, while not the owner of the Odessa property, had sufficient personal familiarity with the property, as a long-term tenant, to provide competent and relevant testimony about its fair rental value. However, although Builes may have been qualified to testify about the property's value, we conclude that his valuation testimony was not relevant.

In response to Appellants' arguments that Builes's testimony was conclusory and speculative, Appellees argue that Builes's testimony was not conclusory and speculative because it was "based upon a comparison with other similar rental properties in the area," thus providing a factual basis for his opinion. The comparable-sales method is one of three traditional approaches to determining market value. *Religious of the Sacred Heart v. City of Houston*, 836 S.W.2d 606, 615–17 (Tex. 1992). However, to provide competent evidence of value under this

method, the comparable sales (or, in this case, rentals) must be voluntary, occur near in time to the dispute and in the same vicinity, and involve land with similar characteristics. *See City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001); *Wood*, 473 S.W.3d at 338. To properly apply the method, an appraiser or other witness, such as the property owner, must find data for rental prices of similar properties and then make upward or downward adjustments to these prices to account for differences between the similar properties and the subject property. *Sharboneau*, 48 S.W.3d at 182; *Wood*, 473 S.W.3d at 338. The witness must then explain how these differences affected his calculations. *See Wood*, 473 S.W.3d at 337–38 (citing *Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 835–36 (Tex. 2014)).

Here, Builes concluded that he felt that "about 1,250 [dollars] a month" was the reasonable rental value of the property during the holdover period. But crucially, Builes did not provide a proper factual basis to support his valuation under the comparable-sales method. Before Builes provided his valuation, Builes testified that he had recently been "looking around for new property for Xenco" and mentioned that Xenco had recently leased new property in Midland. However, apart from his brief description of the Midland property, Builes did not provide any details regarding the other properties he looked at, did not testify about their values, and did not explain how those properties factored into his valuation.

Additionally, Builes's testimony about the Midland property was not competent evidence of value under the comparable-sales method, in part, because he did not explain how the Midland property was comparable to the Odessa property. Importantly, Builes did not provide any specific characteristics of the Odessa property, nor did he provide any specific characteristics of the Midland property to show why the two properties were similar. *See Wood*, 473 S.W.3d at 338 (discussing that the witnesses did not provide relevant evidence of value under the comparable-

sales method, where they provided few details of the characteristics of the subject property and comparable property other than the purposes for which they were used). For example, Builes did not testify about the specific sizes of the properties, the distance between them, or the specific condition they were in. Nor did Builes state whether both properties were zoned for commercial use, were within the city limits, or had comparable public access and utilities.

Moreover, even if we assume that these two properties were similar in nature, Builes did not specifically explain how the Midland property supported his valuation of the Odessa property. *See Wood*, 473 S.W.3d at 338. The entirety of Builes's description of the Midland property consists of the following testimony: "We were able to find this place very close to downtown Midland, which is more expensive, more premium real estate, about the same size, much better condition." Although Builes testified that the Midland property was "more expensive," Builes did not explain his downward adjustment from the value of the Midland property ($2,500) to the Odessa property ($1,250). He simply stated the general location of the Midland property and briefly commented on its relative size and condition. Such statements, without more, do not provide a factual basis for his conclusion. *See id.* (discussing that the witness must explain how the differences between the properties influenced his valuation opinion). In light of this analytical gap between the data relied upon and the opinion proffered, we conclude that Builes lacked a proper foundation for his ultimate valuation. Accordingly, we conclude that the trial court abused its discretion when it permitted Builes to provide conclusory and speculative—and thus nonrelevant—testimony about what he believed was the reasonable rental value of the property during the holdover period. We sustain Appellants' fourth issue.

In Appellants' fifth issue, they contend that the evidence is both legally and factually insufficient to support the trial court's award of damages. We agree with

16

Appellants' argument that the evidence was legally insufficient. Because we sustain Appellants' legal-sufficiency argument, we do not reach their challenge to the factual sufficiency of the evidence.

The rental value of a property must be established with reasonable certainty. *City of Austin v. Teague*, 570 S.W.2d 389, 395 (Tex. 1978). When the evidence does not indicate the factual basis behind the witness's valuation, such evidence is legally insufficient to sustain a judgment regarding the reasonable rental value of property. *See Justiss*, 397 S.W.3d at 159; *see also Wood*, 473 S.W.3d at 338. Conclusory testimony without an explanation will not support a judgment. *Justiss*, 397 S.W.3d at 158–59, 161.

Here, the trial court concluded that the reasonable rental value of the property during the holdover period was $1,200 per month. The only evidence offered to support the trial court's conclusion was Builes's testimony. However, as discussed above in our disposition of Appellants' fourth issue, Builes did not provide a factual basis to support his valuation. He merely provided a conclusion without an explanation. Therefore, his testimony was legally insufficient to support the trial court's award of damages. We sustain Appellant's fifth issue. Accordingly, we reverse the trial court's judgment regarding the reasonable rental value of the property during the holdover period, and because liability was not contested, we remand the cause for a new trial on such damages. *See* TEX. R. APP. P. 44.1(b).

Lastly, in Appellants' sixth issue, they contend that the trial court erred when it failed to award attorney's fees to Appellants. Appellants argue that they were entitled to attorney's fees under Section 37.009 and Section 38.001(8) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.009, 38.001(8) (West 2015).

We review a trial court's award of attorney's fees for an abuse of discretion. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). A trial court abuses

17

its discretion when it acts arbitrarily, unreasonably, or without regard to guiding legal principles. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). We presume that the trial court acted within the bounds of its discretion unless the record shows the contrary. *See Sanchez v. AmeriCredit Fin. Servs., Inc.*, 308 S.W.3d 521, 526 (Tex. App.—Dallas 2010, no pet.).

First, we address Appellants' argument that attorney's fees were warranted under Section 37.009 of the Texas Uniform Declaratory Judgments Act (DJA). *See* CIV. PRAC. & REM. § 37.002(a).

In Texas, a party may not recover attorney's fees unless authorized by contract or statute. *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006)). Section 37.009 provides that in any proceeding "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." CIV. PRAC. & REM. § 37.009. Because the grant or denial of attorney's fees under the DJA is within the sound discretion of the trial court, we will not reverse its judgment on appeal absent a clear showing that it abused its discretion. *Oake v. Collin Cty.*, 692 S.W.2d 454, 455 (Tex. 1985); *Guniganti v. Kalvakuntla*, 346 S.W.3d 242, 253 (Tex. App.—Houston [14th Dist.] 2011, no pet.)

Appellants note in their brief that they "pleaded in Count 10 [of their counterclaim] a Petition to Remove Cloud and Quiet Title." According to Appellants, because Appellants "prevailed on their counterclaim that [Appellees] did not have a valid claim of ownership to the Property," they were entitled to damages under the DJA. We disagree.

It is well established that a party may not use a declaratory judgment action "solely to obtain attorney's fees that are not otherwise authorized by statute." *Sw. Guar. Trust Co. v. Hardy Road 13.4 Joint Venture*, 981 S.W.2d 951, 956 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). "Attorney's fees are not available in

18

a suit to quiet title or to remove cloud on title." *Id.* at 957. A suit to quiet title, which is synonymous with a suit to remove a cloud from title, seeks to declare as invalid the defendant's claim of ownership or title. *See Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

Here, under their counterclaim, Appellants sought a declaration that "anything which cloud[ed]" their title "be declared invalid and unenforceable." As such, Appellants' counterclaim was essentially a suit to quiet title for which attorney's fees are not recoverable. *See DAS Inv. Corp. v. Nowak*, No. 01-03-00140-CV, 2004 WL 396983, at *2–3 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (mem. op.) (holding that defendants could not recover attorney's fees under the DJA because their counterclaim, which alleged that liens were clouds on title, were unenforceable, and prevented defendants from having good and marketable title, was essentially a claim to quiet title). Therefore, we conclude that the trial court did not abuse its discretion when it declined to award Appellants attorney's fees based on this counterclaim.

Appellants also appear to argue that they are entitled to attorney's fees under the DJA because "Tuttle prevailed on the claims involving the [enforceability] of a noncompetition agreement" between the parties. However, we note that an award of attorney's fees under the DJA is not conditioned upon whether a party prevails. *City of Pasadena v. Gennedy*, 125 S.W.3d 687, 701 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). As such, a trial court is not required to award attorney's fees to the prevailing party in a declaratory judgment action. *Legacy Bank v. Fab Tech Drilling Equip., Inc.*, No. 11-16-00356-CV, 2018 WL 6928971, at *8 (Tex. App.— Eastland 2018, no pet.) (citing *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637–38 (Tex. 1996)).

Here, the trial court resolved the dispute regarding the noncompetition agreement by modifying the terms of the agreement. It also concluded: "The Court

declines as within its discretion to award any attorneys' fees to either [Appellants] or [Appellees]." A trial court does not abuse its discretion simply because it concludes that each party should bear his own attorney's fees. *See Coghill v. Griffith*, 358 S.W.3d 834, 840 (Tex. App.—Tyler 2012, pet. denied) Based on our review of the record, the record does not clearly show that the trial court abused its discretion when it declined to award attorney's fees under the DJA. Therefore, we will not disturb the trial court's judgment regarding attorney's fees under the DJA.

We next address Appellant's argument that Section 38.001(8) of the Texas Civil Practice and Remedies Code mandated an award of attorney's fees. Section 38.001 of the Texas Civil Practice and Remedies Code allows for the recovery of reasonable attorney's fees, "in addition to the amount of a valid claim and costs," if the claim is for the breach of "an oral or written contract." CIV. PRAC. & REM. § 38.001(8). If the plaintiff prevails on a breach-of-contract claim and recovers damages, an award of reasonable attorney's fees is mandatory, and "the trial court has no discretion to deny them." *Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009). Ordinarily, the reasonableness of such fees is a question of fact for the factfinder, and a reviewing court may not substitute its judgment for that of the factfinder. *Id.*

Appellants assert that they are entitled to attorney's fees because they prevailed on their "[breach of] contract claims." In their counterclaim, Appellants asserted that Appellees breached four separate contracts. Specifically, Appellants alleged that Appellees breached their contractual obligations under an "Asset Purchase Agreement, the May 2010 Lease, and [two promissory notes]." After Xenco stipulated to contractual liability, the parties also stipulated to damages arising out of the breaches of these contracts. The trial court then awarded Appellants damages in accordance with these stipulations. The trial court awarded Appellants the remaining amount due and outstanding under the Asset Purchase

Agreement, late fees and ad valorem taxes under the lease, and late payment fees under the two promissory notes. *See id.* Nevertheless, the trial court declined to award attorney's fees "to either party."

Because Appellants prevailed on their breach-of-contract claims and recovered damages, attorney's fees were mandatory under Section 38.001(8). Thus, the trial court did not have discretion to completely deny Appellants attorney's fees. *See Smith*, 296 S.W.3d at 547. Therefore, we conclude that the trial court abused its discretion when it declined to award Appellants any attorney's fees with respect to their breach-of-contract counterclaims. We sustain Appellant's sixth issue. Accordingly, we also reverse the trial court's denial of attorney's fees to Appellants and remand the issue of attorney's fees to the trial court for its reconsideration in light of this opinion.

## *This Court's Ruling*

We reverse the trial court's judgment insofar as it pertains to the amount of damages awarded to Appellants for the reasonable rental value of the property during the holdover period and the denial of attorney's fees to Appellants. In all other respects, we affirm the judgment of the trial court. We remand the cause to the trial court for further proceedings consistent with this opinion.

KEITH STRETCHER

March 21, 2019                                                  JUSTICE

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[6]

Willson, J., not participating.

---

[6]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.