

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-23-00078-CV
_____

WILDCAT CONCRETE & CONSTRUCTION, LLC,
A NEW MEXICO LIMITED LIABILITY COMPANY, APPELLANT

V.

KORNELIS W. VANDERLEI AND PIERTSJE VANDERLEI
D/B/A SETTING SUN DAIRY, APPELLEES

On Appeal from the 154th District Court
Lamb County, Texas
Trial Court No. DCV-20256-19, Honorable Felix Klein, Presiding

December 20, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Wildcat Concrete & Construction, LLC ("Wildcat") appealed from a final judgment awarding damages and attorney's fees to Kornelis W. Vanderlei and Piertsje Vanderlei d/b/a Setting Sun Dairy ("Vanderlei") relating to the breach of a construction contract. The contract involved Wildcat's agreement to build dairy facilities for Vanderlei. In addition to awarding damages and attorney's fees, the trial court also invalidated Wildcat's mechanic's lien. Two issues pend for disposition, though the first has multiple subparts.

Upon considering those necessary to the disposition of the appeal, we modify the judgment and affirm as modified.

### Issue One

Through its first issue, Wildcat attacks the award of damages and attorney's fees on myriad grounds. We address that relating to the sufficiency of the evidence to support the awards; it is dispositive. The entity contends that the evidence is legally insufficient to support them.

The standard of review is well settled and fully explained in *Crosstex N. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 613 (Tex. 2016). We apply it here, while also noting that evidence is legally insufficient if it is conclusory. *See Windrum v. Kareh*, 581 S.W.3d 761, 768–70 (Tex. 2019).

We begin with damages. The trial court awarded "[t]he sum of $100,000.00 (Kornelis W. Vanderlei and Braden Mikeska $50,000.00 each) for supervising the completion of the project contracted for."[1] Those damages were purportedly incurred once Wildcat left the project.

One seeking to recover remedial damages must prove the damages sought are reasonable and necessary. *McGinty v. Hennen*, 372 S.W.3d 625, 627 (Tex. 2012) (per curiam). This applies to recovering damages related to the cost of completion. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200 (Tex. 2004) (per curiam) (stating that a party seeking to recover the cost of competition in a breach of contract case must prove the damages sought are reasonable). Satisfying this requirement entails showing more than simply "the nature of the injuries, the character

---

[1] Though other damages were sought, none were granted.

2

and need for the services rendered, and the amounts charged therefor." *McGinty*, 372 S.W.3d at 627. That said, we turn to the record.

The sole evidence touching upon the reasonableness and necessity of the damages relating to supervising completion came from Kornelis and his son-in-law Braden Mikeska. The sum and substance of Kornelis's testimony was as follows:

> Q. Okay, then on the next page under 2 there's some supervision that you've allocated or requested, 50,000 for you and 50,000 for your son-in-law Braden Mikeska. Can you explain to the Court where you came up with that amount?
>
> A. That's basically taking so much time away from our daily schedule and calculate how many hours, things we put in there. How many hours we spent on - - I was constantly watching what was going on.
>
> Q. Do you think that's a reasonable sum based on your expertise and the time you have to devote to this project to get it supervised and completed?
>
> A. Yes, I think so.
>
> Q. And same thing for your son-in-law, Braden Mikeska?
>
> A. Yes.

In turn, Mikeska testified to the following:

> Q. Mr. Mikeska, can you tell us what your current profession and job is?
>
> A. Yes, sir, I work for Case and - - Vanderlei at - - dairies in dairy industry.
>
> Q. Did you - - Tell us how you dealt with this construction and supervision and what your job was in trying to get this construction completed.
>
> A. When discussions first started and the contracts were signed, I didn't have a job that was supposed to be in construction of the dairy, but it turns out that I felt it necessary, because in order to see what was going on, on a daily bass [sic], in order for things to go correctly because of how incorrectly things were going numerous times. And throughout that time, throughout the construction of the dairy I would find problems that weren't being handled correctly and get it taken care of on my or [Kornelis's] watch.

3

Q. What was your job at the dairy? You said you weren't supposed to be dealing with this construction and supervision, so what was your job?

A. I was supposed to be concentrating on the existing dairies and making sure they were being run correctly, which my time was being pulled away because of this also.

Q. Okay. And about how much time a day would you say you spent at this construction site trying to get this Setting Sun Dairy supervised and completed?

A. I think some days it could range from one hour to four or five hours.

As can be seen, the foregoing consists of no more than an indefinite estimate of the hours spent supervising unenumerated tasks. This indefinite estimate of hours was then multiplied by some unmentioned monetary figure to derive a total of $100,000. Kornelis then drew on his undescribed "expertise" to deem the sum reasonable. Whether his "expertise" pertained to the field of construction work or operating a dairy is unknown. Indeed, nothing of record reveals the extent, if any, of Kornelis's "expertise" in building structures in general, much less those used in the dairy industry.

Whether the time expended in performing their nondescript supervisory roles had any relationship to time expended by those actually experienced in the field of construction also is unknown. The court is also left without information about the charges levied or costs incurred by the average foreman or supervisor when performing like duties. Nor is there any indication of the tasks being supervised, their necessity, the necessity of expending whatever time was spent in supervising them, or the number of days spent supervising completion of the work. Vanderlei merely gave the trial court a range of hours which could have been spent on any particular day which, in his opinion, somehow warranted the receipt of $100,000.

4

In sum, the "reasonableness" of the $100,000 is simply *ipse dixit* lacking foundation in evidence or explanation.  The same is true of the $100,000 itself.  The components needed to derive it are missing.  For all we know, it could consist of 100 hours actually supervising the propriety of ongoing construction multiplied by $1,000 per hour or 1,000 hours "playin' solitaire 'til dawn with a deck of 51"[2] multiplied by $100.  Simply put, Vanderlei left us to speculate.  The dearth of explanation and foundation underlying the witness testimony rendered it conclusory, and, consequently, no evidence supporting the trial court's award.  *See Windrum*, 581 S.W.3d at 770*.*  Thus, we sustain Wildcat's issue about the award lacking the support of legally sufficient evidence.

Turning to attorney's fees, we find a like dearth.  The evidence proffered to support the trial court's award of $10,000 was nothing more than legal counsel's testifying to the following:

> I am [his name], licensed to practice law in the State of Texas and other courts and federal courts.  United States Supreme Court too, although I've never been there.  But anyway, practiced law out here in the South Plains for over 40 years.  I've helped people with all kinds of legal issues, had all kinds of lawsuits, including construction lawsuits like this one.  It's been my experience that once you get to this point you have to obtain a judgment and then you have to try to collect it.  And what we've asked for in this case through the trial court stage is the sum of $10,000 for completion through this case, this trial, and then what will take place if we receive a judgment, and that is collecting and trying to take time to collect the judgment, discover assets, have writs of execution issued.  So, we're asking for the sum of $10,000 for attorney's fees.  And that's all my testimony.

The burden lay with the claimant to prove its entitlement to attorney's fees.  *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020) (stating that the party seeking

---

[2] THE STATLER BROTHERS, *Flowers on the Wall*, *on* FLOWERS ON THE WALL (Columbia Records 1965).

5

attorney's fees has the burden of proof); *Shaw v. Am. Bank of Commerce*, No. 07-22-00067-CV, 2023 Tex. App. LEXIS 2413, at *3–4 (Tex. App.—Amarillo Apr. 13, 2023, no pet.) (mem. op.). A factfinder's starting point consists of "determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2018); *accord Yowell*, 620 S.W.3d at 354 (requiring the party seeking fees to "supply enough facts to support the reasonableness of the amount awarded"). Additionally, "[s]ufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos*, 578 S.W.3d at 498.

Aside from allusion to who performed the legal services, counsel's testimony touched none of the other *Rohrmoos* factors. Together, those factors comprise the evidence sufficient to prove the attorney's fees collectable. With evidence of four of the five missing, the $10,000 fee sought and awarded lacks a legally sufficient evidentiary basis.

Normally, the proper remedy in these types of situations is to remand the issue for redetermination by the trial court. *In re Estate of Lang*, No. 07-22-00355-CV, 2023 Tex. App. LEXIS 6618, at *11–12 (Tex. App.—Amarillo Aug. 25, 2023, no pet.) (mem. op.). Yet, one cannot recover attorney's fees, via a declaratory action, in a suit to quiet title or to remove a cloud on title. *Tuttle v. Builes*, 572 S.W.3d 344, 359 (Tex. App.—Eastland 2019, no pet.); *Starbranch v. Crowell*, No. 01-15-00429-CV, 2016 Tex. App. LEXIS 2132,

6

at \*5–6 (Tex. App.—Houston [1st Dist.] Mar. 1, 2016, no pet.) (mem. op.). This is of import here given the ground upon which Vanderlei sought fees. We find that ground within his live pleading. There, he asserted that "the Plaintiffs seek recovery of reasonable and necessary attorney's fees for prosecution of this action to remove cloud from title" and "[a]n award of attorney's fees to the Plaintiffs would be equitable and just and authorized by **Section 37.009 of the Civil Practice and Remedies Code**." (Emphasis added). Section 37.001 *et seq.* of the Civil Practice and Remedies Code happens to be the Declaratory Judgment Act. This would suggest that remand to the assessment of fees would be unnecessary, given that they were unrecoverable under § 37.009.

But wait, there's more. Wildcat conceded, via its reply brief, that it "will not challenge the trial court's attorney fees award" "[i]n the event the Court upholds some portion of the trial court's judgment awarding [Vanderlei] relief on these claims." "These claims" included "its suit to strike Wildcat's lien." So, what we do depends on our disposition of the second issue, to which we now turn.

### Issue Two

Through issue two, Wildcat contends that no evidence supports the trial court's determination that it untimely perfected its mechanic's lien. We overrule the contention.

Section 53.052 of the Property Code requires an original contractor claiming a mechanic's lien to "file an affidavit with the county clerk for projects other than residential construction projects, not later than the 15th day of the fourth month after the month in which the original contractor's work was completed, terminated, or abandoned." TEX. PROP. CODE ANN. § 53.052(a)(1). Wildcat filed its affidavit on August 15, 2019.

7

Next, Wildcat's president testified, among other things, that the company walked off the job sometime in January 2019. That is some evidence upon which the trial court could reasonably infer that the entity abandoned work in January 2019. Thus, to be timely, Wildcat had to file its affidavit no later than May 15, 2019. Its filing the document on August 15, 2019, meant that the trial court had basis to invalidate the lien as untimely.

Our overruling the issue has one other effect. It triggers Wildcat's concession described above. We have "up[held] some portion of the trial court's judgment awarding [Vanderlei] relief on these claims." That means the award of attorney's fees stands.

We modify the trial court's judgment by striking from it that portion which awards Vanderlei $100,000 in damages and affirm the remainder as modified.


Brian Quinn
Chief Justice